**Mohamad Ahsanul HOQUE; Morsheda Hoque, Petitioners,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–72404.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2003.

Filed May 19, 2004.

David Nakatsuma, Los Angeles, CA, for the petitioners.

Jacqueline R. Dryden and Teresa L. Donovan, United States Department of Justice, Washington, DC, for the respondent.

Before BEEZER, KOZINSKI, Circuit Judges, and SCHWARZER,* Senior District Judge.

BEEZER, Circuit Judge.

Petitioner Mohamad Ahsanul Hoque ("Ahsanul") and his wife, Morsheda Hoque ("Morsheda"), whose claims derive from his, petition for review of a decision of the Board of Immigration Appeals ("BIA") dismissing without opinion their appeal from a decision of an Immigration Judge ("IJ") denying their application for asylum and withholding of removal. The Hoques contend that the IJ and BIA erred in finding their testimony incredible, in determining that they were not persecuted on account of any of the grounds enumerated in the Immigration and Nationality Act ("Act"), and in determining that they faced valid prosecution rather than political persecution if removed to Bangladesh. The Hoques claim that Ahsanul was persecuted by members of a political group that the Bangladeshi government was unable to control because of his political beliefs and activity in support of the Bangladesh Nationalist Party ("BNP").

We have jurisdiction pursuant to 8 U.S.C. § 1252, and we grant the petition for review. We hold that the IJ's adverse credibility determination is not supported by substantial evidence. The IJ's findings of fact underlying the additional bases for

---

* The Honorable William W Schwarzer, Senior District Judge for the Northern District of California, sitting by designation.

denying asylum—that Ahsanul was not persecuted on account of political opinion and did not fear persecution, but valid prosecution—are not supported by substantial evidence. The IJ's determination that Ahsanul was not persecuted on account of political opinion because "political jealousy" was a factor that motivated his persecutors is inconsistent with the law of this circuit. Crediting the Hoques' testimony, we conclude that the Hoques have established past persecution, giving rise to a presumptive eligibility for asylum and withholding of removal. We remand to the BIA to give the Attorney General an opportunity to rebut this presumption and for the BIA to determine whether the Hoques qualify for asylum and withholding of removal and, if appropriate, to exercise discretion on behalf of the Attorney General regarding the asylum claim.

## I

Ahsanul and Morsheda Hoque are natives and citizens of Bangladesh. Ahsanul testified that he joined the BNP as a university student in the late 1980s and became active in local and national politics. His stated goal was to become a high-level political leader to promote democracy and alleviate the poverty of Bangladesh.

Ahsanul testified that he became vice president of the BNP Youth Group for his region in 1993. In this role, he worked to arrange meetings and demonstrations in support of the party. Ahsanul actively supported the BNP in Bangladesh's February 15, 1996 national elections. The BNP held power at the time, and the main opposition parties denounced the elections as unfair and held a boycott to stop the elections. Ahsanul stated that he worked to encourage people to participate in the election and to support the BNP. The BNP won the election, though the opposition parties questioned the result.

Ahsanul said that two days after the election, on February 17, 1996, he was kidnaped by ten to fifteen men, some of whom he recognized as members of the Awami League, a competing political party. Ahsanul said that the men took him to their camp in Mirpur, where they beat him with wooden sticks and an iron rod and stabbed him in his back, shoulders, forehead and both hands. Ahsanul testified that the men who beat him said, "How dare you are working [sic] for the elections when we are not." Ahsanul was found unconscious on the street the next morning and was hospitalized for eight days. He was instructed to rest at home for about a month after his hospitalization.

After recovering from his injuries, Ahsanul resumed his political involvement. Ahsanul testified that he was "harassed all the time," and that members of the Awami League threatened his family and co-workers, telling them that if Ahsanul reported the incident to the police, he would be killed. However, he did not experience more serious difficulties until the approach of a June 1996 national election.

In the spring of 1996, the BNP agreed to allow a temporary caretaker government to assume power to conduct another national election on June 12, 1996. Ahsanul stated that he organized and participated in a local demonstration in support of a BNP candidate on May 28, 1996, approximately two weeks before the June election. The Awami League held a demonstration on the same day, and the two groups clashed in the street. According to Ahsanul, about seven people on each side suffered injuries. Ahsanul testified that he never advocated the use of violence or physical action by his party against other parties' members and asserted that he never had physical contact with anyone, other than to defend himself when he was assaulted. Ahsanul testified that the

Awami League wrongly blamed him for the violence because he had played a leading role in organizing the demonstration.

After the demonstration, Awami League members searched for Ahsanul at work and at home. Ahsanul stated that he went into hiding on May 28 or 29, 1996, and remained in hiding until approximately three weeks following the election, when he and his wife left Bangladesh.

Ahsanul testified that on May 30, 1996, while he was in hiding, members of the Awami League entered his audio-video business and destroyed all of the equipment, making any recovery of the business impossible.

Ahsanul testified that when the Awami League won the national elections on June 12, 1996, the new government falsely accused him of inciting violence at the May demonstration. Ahsanul stated that the Awami League brought charges against him and named him as a defendant in a lawsuit.

The Hoques arrived in the United States on or about July 4, 1996.[1] They were admitted as nonimmigrant visitors for pleasure with authorization to remain in the United States until January 3, 1997.

After his arrival in the United States, Ahsanul occasionally communicated with his mother and friends from the BNP back in Bangladesh. A BNP friend informed Ahsanul about the charges against him for his involvement in the May 1996 demonstration, but the friend was unable to provide details about the status of his case in Bangladesh. Ahsanul expressed fear that if he returned to Bangladesh he would be immediately apprehended and possibly killed by the Awami League.

The Hoques applied for asylum and withholding of removal on September 30, 1996. On January 21, 1997, the former Immigration and Naturalization Service ("INS")[2] issued the Hoques Orders to Show Cause. The Hoques have conceded that they are removable.

## II

To be eligible for asylum, the Hoques must show that Ahsanul is unable or unwilling to return to his country of origin because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In order to qualify for withholding of removal, the Hoques must show that Ahsanul's "life or freedom would be threatened" if he is returned to his homeland on account of one of the above factors. 8 U.S.C. § 1231(b)(3).

■ Where, as here, the BIA adopts the decision of the IJ, we review the IJ's decision as if it were that of the BIA. *Wang v. Ashcroft*, 341 F.3d 1015, 1020 (9th Cir. 2003).

■ In reviewing a decision of the BIA to deny asylum and withholding of removal, we examine whether the decision is supported by substantial evidence. *Id.* at 1022. We review adverse credibility determinations under the substantial evidence standard. *He v. Ashcroft*, 328 F.3d 593, 595 (9th Cir.2003). Although the

---

1. The Hoques' briefing and testimony reflects a July 4, 1996 date of entry into the United States. The Order to Show Cause and the Hoques' asylum application list the date of entry as June 4, 1996. This appears to be an error. The record does not contain copies of the Hoques' entry paperwork, but the Hoques' authorization to remain in the United States until January 3, 1997 would be consistent with a six month visitor's visa beginning July 4, 1996.

2. John Ashcroft, Attorney General, is substituted for the INS as the proper respondent. Fed. R.App. P. 43(c)(2). The INS ceased to exist on March 1, 2003.

standard of review is deferential, an adverse credibility determination must be supported by "specific, cogent reason[s]." *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002) (internal quotation marks and citations omitted). Any such reason must be "substantial and bear a legitimate nexus to the finding." *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir.2001) (internal quotation marks and citations omitted). "Minor errors or inconsistencies ... do not constitute a valid ground upon which to base a finding that an asylum applicant is not credible." *Akinmade v. INS*, 196 F.3d 951, 954 (9th Cir.1999) (internal quotation marks and citations omitted). This is particularly true where inconsistencies cannot be viewed properly as attempts to enhance claims of persecution or where they reveal nothing about the applicant's fear for his safety. *See Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir.2000).

We review questions of law, and the application of legal principles to facts, de novo. *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995).

### III

We conclude that the IJ's reasons for finding the Hoques incredible are not supported by substantial evidence. We therefore reverse the IJ's adverse credibility determination.

The IJ based her adverse credibility determination on the following factors: (1) a discrepancy between the original and a copy of a corroborating letter from the BNP (an illegible handwritten date on the original that is not present on the copy);

(2) inconsistencies between the testimony of Ahsanul and his wife regarding the dates and occasions on which Ahsanul was in hiding; (3) a finding that Morsheda's testimony regarding the dates Ahsanul hid was internally inconsistent, hesitant, and unsure; (4) Morsheda's failure to volunteer testimony about the May 1996 demonstration and destruction of the audio-video business; and (5) Ahsanul's failure to produce additional corroborating documentation proving his hospitalization.

The first ground on which the IJ based her adverse credibility determination is a discrepancy between the original and a copy of a letter from the BNP corroborating Ahsanul's claims of persecution. The letter supports Ahsanul's testimony that he was the vice president of a regional branch of the BNP Youth Party and that he was tortured and threatened with death by a rival political group.[3] The original letter, which was in the possession of the government and submitted to the IJ at the hearing, bears a handwritten marking in the upper right-hand corner that appears to be a date. The copy, which was submitted to the INS with Ahsanul's original application for asylum, does not bear the handwritten marking.

The IJ stated that she was "inclined to believe that the original document was altered" and stated that she was "extremely suspicious" about all supporting documents submitted by Ahsanul that related to him personally as well as his "overall testimony concerning the problems that he had in Bangladesh as a result of his membership in the Bangladesh Nationalist Youth Par-

---

**3.** The letter is typewritten in English on what appears to be BNP letterhead (the text of the letterhead is in Bangali script). It is signed by two individuals whose signature stamps identify them as the President and Secretary of the BNP in Pallabi Thana, Dhaka, Bangladesh.

Counsel for the Hoques stated that he had never seen the original letter, which had been in the possession of the INS, but offered no further explanation. After the IJ pointed out the handwritten date, counsel for the government objected to the document, and the court admitted the letter for identification purposes only.

ty." This finding is not supported by substantial evidence. There is no evidence in the record that Ahsanul wrote in the illegible date. Ahsanul was never asked to explain the marking or to provide the history of the submission of the letter and any copies to the INS.

The marking itself offers no support for the theory that Ahsanul wrote in the illegible date. Had the new marking aided petitioner's asylum application in some way, we might be willing to infer his participation in the alteration and thus could have upheld the IJ's adverse credibility finding. Here, however, we cannot conceive of—and the government has not suggested—any way that the altered date could be interpreted as improving petitioner's case. *See Shah*, 220 F.3d at 1068 ("If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution,[they] have no bearing on credibility.'" (internal citations omitted)). Thus, we cannot draw the conclusion that Ahsanul had any involvement in altering the document. The IJ erred in finding that Ahsanul lacked credibility simply because a marking resembling a date had been added to the document.

The IJ also found inconsistent the testimony of Ahsanul and Morsheda regarding the dates Ahsanul left home to hide from the Awami League. A review of the record reveals no such inconsistency. Ahsanul's wife testified that he hid overnight at a friend's home on seven or eight occasions during the month after his kidnaping and subsequent hospitalization. Ahsanul was never asked whether he went into hiding during this time period. Nor was he asked to tell the court about *all* of the occasions on which he hid from the Awami League. Ahsanul's failure to testify about these occasions of temporary hiding does not make his testimony inconsistent with that of his wife. *Cf. He*, 328 F.3d at 601 (accepting petitioner's explanation that he

did not mention a particular event earlier in his testimony in part because "he had not been asked about it"); *see also Singh v. Ashcroft*, 301 F.3d 1109, 1112 (9th Cir. 2002) (explaining that an omission is not the equivalent of an inconsistency). Moreover, minor omissions or inconsistencies regarding the exact dates and the amount of time Ahsanul spent in hiding cannot form the basis of an adverse credibility determination. *See Vilorio–Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir.1988) (holding that inconsistencies between the testimony of petitioner and that of his cousin regarding the amount of time they hid from a death squad and how much they paid the man who hid them did not go to the heart of the asylum claim and thus could not form the basis of an adverse credibility finding).

The IJ also found Morsheda's testimony regarding the dates Ahsanul spent in hiding unresponsive, internally inconsistent, and hesitant. The record does not support this finding. *See Singh*, 301 F.3d at 1111 ("To support an adverse credibility determination based on unresponsiveness, the BIA[or IJ] must identify particular instances in the record where the petitioner refused to answer questions asked of him."); *Akinmade*, 196 F.3d at 956 (inconsistencies that are possibly the result of mistranslation or miscommunication are not a sufficient basis for an adverse credibility finding).

The IJ found contradiction in Morsheda's failure to mention two incidents that her husband had discussed in his testimony, the May 1996 demonstration and vandalism of the audio-video store. Morsheda, a corroborating witness, was never asked about these incidents. Her failure to bring them up on her own during structured direct and cross-examination does not make her incredible or make her testi-

mony inconsistent with that of her husband. *See Singh,* 301 F.3d at 1112.

■ The IJ also found that Ahsanul's failure to provide documentary evidence of his hospitalization for wounds sustained when he was beaten by Awami League members supported an adverse credibility determination. In support of the Hoques' claim that Ahsanul was kidnaped, beaten, and subsequently hospitalized, he offered the asylum application, consistent and detailed testimony, corroborating letters, photographs of his scars, and consistent United States State Department Country Conditions Reports. Where, as here, "a petitioner provides some corroborative evidence to strengthen his case, his failure to produce still more supporting evidence should not be held against him." *Gui,* 280 F.3d at 1227. We reverse the IJ's adverse credibility determination.

## IV

In addition to the adverse credibility determination, the IJ determined that Ahsanul had not been persecuted on account of one of the five enumerated grounds and that he feared valid prosecution rather than political persecution if removed to Bangladesh.

### A. Fear of persecution versus fear of prosecution

■ The IJ stated:

The Court believes that the charges that were brought against the male respondent were not on account of any one of the five enumerated grounds contained in the Act, but the Court believes that the male respondent had engaged in inciting political violence and as a result of this the government brought charges

against him. The Court believes that the male respondent's fear of return to Bangladesh is not based on persecution but is truly based upon possible prosecution for criminal acts that he engaged in.

There is no direct factual support in the record for the IJ's determination. Ahsanul testified that he never incited, encouraged, or participated in political violence, other than to defend himself when attacked. He stated consistently that he was *wrongly* accused of inciting violence in the May 1996 demonstration.

The IJ incorrectly reasoned that because the demonstration took place and was investigated by police when a neutral caretaker government was in power, the charges likely led to valid prosecution rather than persecution. It is not clear from the record whether the charges against Ahsanul were brought under the caretaker government or only after the Awami League came into power two weeks later. Ahsanul testified that when the Awami League came into power, it brought charges and a suit against him. He also testified that the Awami League government arrested hundreds of BNP members for illegitimate reasons.[4] The IJ's determination that the Hoques feared prosecution rather than persecution is unsupported by the record.

In addition, the IJ relied on a United States State Department Bangladesh Country Report on Human Rights Practices, which states that political violence and confrontation was commonplace and widespread in the country. We have admonished IJs and the BIA for extrapolating specific findings regarding an applicant from general information about

---

4. Ahsanul's account is consistent with the U.S. State Department's Bangladesh Country Report on Human Rights Practices for 1997, which describes "credible reports from human rights monitors and political activists

that the Awami League Government used the [Special Powers Act] primarily as a tool to harass and intimidate political opponents," and that the Government had arrested hundreds of opposition activists under the Act.

country conditions reflected in State Department reports. *See Shah,* 220 F.3d at 1069. The fact that political violence in Bangladesh is widespread says very little about whether Ahsanul was personally responsible for inciting violence in the May 1996 demonstration. We therefore reject the IJ's determination that the Hoques fear valid prosecution rather than political persecution.

**B. Past persecution based on account of "political jealousy" versus political opinion**

■ The IJ found that Ahsanul was not "merely targeted by members of the Awami League because of his involvement in the BNP" but that he was targeted because of the "political jealousy" of his rivals. The IJ thus resolved that Ahsanul had not suffered past persecution on account of one of the five enumerated grounds.

■ There is ample evidence in the record that Ahsanul was persecuted as a result of his activity in support of the BNP. Testimony that Ahsanul was popular and adept at recruiting members to the BNP, engendering the personal jealousy of Awami League members, does not detract from evidence that their motivation for harming him was political. A persecutor may have multiple motives for inflicting harm on an asylum applicant. As long as the applicant produces evidence from which it is reasonable to believe that the persecutor's action was motivated, at least in part, by a protected ground, the applicant is eligible for asylum. *See, e.g., Gafoor v. INS,* 231 F.3d 645, 652–54 (9th Cir.2000); *Shoafera v. INS,* 228 F.3d 1070, 1075–76 (9th Cir.2000); *Borja v. INS,* 175 F.3d 732, 736 (9th Cir.1999) (en banc).[5]

The record does not support a finding that Ahsanul was persecuted only because the Awami League members were jealous of him. Rather, it compels the conclusion that Ahsanul was persecuted based, at least in significant part, on his political beliefs. The IJ's determination that Ahsanul did not suffer past persecution on account of political opinion is not supported by the law of this circuit.

**V**

■ We reverse the IJ's adverse credibility determination, reject the IJ's additional bases for denying asylum, and remand to the BIA for further proceedings. The record compels us to conclude that the Hoques have experienced past persecution in Bangladesh on account of Ahsanul's political opinion by a group that the government was unable to control. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). A finding of past persecution gives rise to a presumption of eligibility for asylum and withholding of removal. *See Baballah v. Ashcroft,* 335 F.3d 981, 992 (9th Cir.2003); 8 C.F.R. §§ 208.13(b)(1), 208.16(b)(1)(i). On remand, the Attorney General will have an opportunity to present evidence to rebut that presumption by showing that there has been a fundamental change in circumstances such that the Hoques no longer have a well-founded fear or clear probability of persecution. *See id.* The BIA shall determine whether the Hoques qualify for asylum and withholding of removal and, if appropriate, shall exercise discretion on behalf of the Attorney General with regard to asylum.

---

**5.** Although it is possible that persecution based on "political jealousy," or persecution based on jealousy of the popularity and success of a political rival, is sufficiently similar to persecution based on political opinion to satisfy the INA, we need not reach that issue here.

Petition for review **GRANTED. RE-MANDED.**