**Armen MATEVOSYAN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–71685.

Agency No. A75–647–278.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 2, 2004.*

Decided Nov. 29, 2004.

---

1. U.S. CONST. amend. VI.

2. *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Before REINHARDT, WARDLAW, and PAEZ, Circuit Judges.

### MEMORANDUM[**]

Armen Matevosyan petitions for review of the Board of Immigration Appeals' (BIA) decision to affirm the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review and remand for further proceedings.[1]

We review adverse credibility rulings under the substantial evidence standard. *Hoque v. Ashcroft,* 367 F.3d 1190, 1194 (9th Cir.2004). Here, the IJ's negative credibility determination is not supported by substantial evidence. First, the IJ disbelieved Matevosyan's testimony that he was a Pentecostal Christian. The IJ concluded that it was "absolutely amazing, and totally incredible" that Matevosyan continued to practice his religion in Armenia despite the danger of persecution and "yet he comes to the United States where there is religious freedom and he doesn't bother to join a church." The IJ's subjective views regarding whether a true Pentecostal Christian would join a church

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts of this case, we recite them only as necessary to explain our decision.

in the United States cannot form the basis of an adverse credibility finding. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir.2000) ("Personal beliefs cannot be substituted for objective and substantial evidence."). Further, the IJ disbelieved Matevosyan's explanation that he could not find a church that conducted services in the Armenian language. The IJ concluded instead that Matevosyan "made absolutely no efforts to find a Pentecostal church in the city of Glendale," improperly basing this finding on her experience reviewing other Armenian asylum claims and her speculation that such a church must exist. *See id.* at 1168 (holding that an IJ's conjecture and speculation are inadequate bases for a negative credibility finding).

The IJ also impermissibly based her adverse credibility finding on what she perceived to be incorrect answers to her questions about the Christian faith. Matevosyan testified that members of his religion "mostly study the New Testament after Jesus Christ [sic] birth and our ideas they're based on Jesus Christ." The IJ then quizzed Matevosyan about the Bible, asking him to name the first four books. Matevosyan responded by listing the first four books of the New Testament. When the IJ pressed him to name the first four books of the Old Testament, Matevosyan responded, "There is no four parts, the Old Book is one part only. Two parts and this is the parts of the second part. The first part, one part is before Christ's birth and it's one part." Dissatisfied with this answer, the IJ concluded that she

> can't even believe that the respondent has ever looked a [sic] Bible, because if the respondent had looked at a Bible he'd have known that there are many books in the Old Testament and that Christians read both the Old and the New Testament. But while the New Testament certainly discusses the life of Christ, Christian religion do [sic] not ignore the Old Testament.

The IJ's subjective views about what a true Pentecostal Christian would know about the Bible cannot support an adverse credibility determination. *See Bandari,* 227 F.3d at 1167; *Mejia–Paiz v. INS,* 111 F.3d 720, 724 (9th Cir.1997) (stating that an inconsistency between an applicant's assertion that he is a Jehovah's Witness and his willingness to swear under oath before an IJ is, standing alone, "an inadequate basis for an adverse credibility finding").

Likewise, the IJ's finding that, contrary to Matevosyan's testimony, his religion did not prevent him from participating in wars rested on impermissible grounds. The IJ relied on (1) the State Department report's omission of any discussion regarding Pentecostal Christians' opposition to war even though it did mention the anti-war beliefs of Jehovah's Witnesses, and (2) the IJ's experience reviewing asylum claims of other Armenians, "many of whom claim to be Pentecostals, and some of whom have participated in wars and have stated that it is not prohibited by Pentecostal religion." The failure of the State Department report to discuss the beliefs of Pentecostal Christians does not contradict Matevosyan's testimony. *Hoque,* 367 F.3d at 1197–98. Further, the IJ's sense of the experience of prior asylum applicants is not evidence and therefore cannot form the basis of a negative credibility determination. *Bandari,* 227 F.3d at 1168.

■ Moreover, even if it were permissible for the IJ to conclude that Matevosyan's religious beliefs were insincere based on her subjective views, Matevosyan's level of devotion to the Pentecostal church cannot support an adverse credibility determination because it does not go to the heart of his asylum claim. *See Chebchoub v. INS,* 257 F.3d 1038, 1043 (9th Cir.2001) (stating that an inconsistency may support an adverse credibility ruling only when it relates to the basis for an

applicant's alleged fear of persecution and goes to the heart of his claim). Here, Matevosyan alleged that the Armenian government persecuted him on account of his religious beliefs and practices; thus the appropriate inquiry is whether Matevosyan's alleged persecutors believed he was a Pentecostal Christian and persecuted him on this basis. *See Abedini v. INS*, 971 F.2d 188, 192 (9th Cir.1992) (holding that an alien's claim failed where "nothing in the record suggests Abedini has done or said anything that could have come to the attention of the Iranian government that would cause it to impute a political or religious belief to him for which he might be persecuted"). Thus, the IJ's personal view about whether Matevosyan is a devout Pentecostal Christian is an improper basis for an adverse credibility finding.

Second, the IJ concluded that Matevosyan's testimony that the University secured his release from detention was implausible. However, here, too, the IJ's conclusion "amounts to nothing more than her conjecture and speculation" and thus was an improper ground for a negative credibility ruling. *See Bandari*, 227 F.3d at 1168 (holding that an IJ's belief about the German government's policies on educating foreign citizens was pure speculation and thus was an impermissible basis for an adverse credibility finding).

Third, the IJ concluded that Matevosyan testified inconsistently about the number of days he was detained in one of the alleged incidents of persecution. However, Matevosyan repeatedly explained that, although he was detained for a total of 45 days, he was held in a cell without being interrogated for the first 15 days, and he was interrogated and beaten during the final 30 days of his detention. Matevosyan's wife corroborated his testimony that he was detained for a total of 45 days. Thus, contrary to the IJ's contention, there was no inconsistency in Matevosyan's testimony about the length of his detention.

Finally, the IJ concluded that Matevosyan was not credible because he provided a vague answer when asked whether there was a warrant out for his arrest. The IJ stated that Matevosyan answered, "I don't know, well I could say yes." The record actually reflects, however, that Matevosyan first replied, "I think, yes." When asked again, he stated, "I'm sure, I could say yes." On several other occasions, he stated that he believed there was an arrest warrant. Therefore, contrary to the IJ's recollection, Matevosyan consistently testified that there was a warrant for his arrest in Armenia.

In sum, the IJ's adverse credibility finding was not supported by substantial evidence. Accordingly, we grant the petition and remand to the BIA for a determination of whether, accepting Matevosyan's testimony as credible, he qualifies for asylum, withholding of removal, and protection under the CAT.

**PETITION GRANTED AND REMANDED.**