**Fattah Abul KAZI; et al., Petitioners,**

v.

**Alberto R. GONZALES,\* Attorney General, Respondent.**

No. 03–70260.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2005.

Decided June 15, 2005.

---

\* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Carlos A. Cruz, Esq., Alhambra, CA, for Petitioners.

CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Emily A. Radford, Esq., Isaac R. Campbell, Esq., Thomas K. Ragland, Esq., DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: WARDLAW, PAEZ, Circuit Judges, and BEISTLINE,** District Judge.

### MEMORANDUM ***

Fattah Kazi, his wife, and two children, citizens of Bangladesh, appeal the Board of Immigration Appeals' ("BIA") denial of their applications for asylum and withholding of removal. The Immigration Judge ("IJ") concluded that Kazi was not credible

and further found that if Kazi had suffered past persecution, the presumption of future persecution would be rebutted by changed country conditions. The BIA affirmed, noting additional grounds for the IJ's adverse credibility determination. We have jurisdiction under 8 U.S.C. § 1252 and we grant the petition.

"We review adverse credibility determinations under the substantial evidence standard." *Hoque v. Ashcroft,* 367 F.3d 1190, 1194 (9th Cir.2004). Determinations of an alien's eligibility for asylum and withholding of removal are also reviewed for substantial evidence. *Id.* Where, as here, the BIA adopts the IJ's decision and also adds its own findings, we review both decisions. *Chand v. INS,* 222 F.3d 1066, 1072 n. 7 (9th Cir.2000).

■ We conclude that the " '[m]inor inconsistencies [cited by the BIA] that reveal nothing about [Kazi's] fear for [his] safety are not an adequate basis for an adverse credibility finding.' " *Kaur v. Ashcroft,* 379 F.3d 876, 884 (9th Cir.2004) (quoting *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir. 1996)). Thus, that Kazi first testified that the BNP members came to his home "several times" while he was in hiding and later testified that they came "many times" cannot support the adverse credibility finding. *See Vilorio–Lopez v. INS,* 852 F.2d 1137, 1142 (9th Cir.1988) (reversing an IJ's adverse credibility finding that was made on the basis of inconsistencies regarding the date of a threatening incident and the length of time the petitioner remained in hiding from his alleged persecutors).

Further, the record does not support the IJ's finding that Kazi first testified that the BNP members came to his father-in-law's house and that Kazi then contradict-

---

** The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ed this statement; Kazi did not testify that the men came to his father-in-law's house. Similarly, Kazi's testimony regarding the BNP members' numerous threats against Kazi's brothers did not conflict with his brother Mamun's letter, which was written to inform Kazi of a recent threatening incident. That Kazi's brother's letter did not mention earlier incidents, which Kazi described, did not undermine Kazi's credibility. *See Wang v. Ashcroft,* 341 F.3d 1015, 1022 (9th Cir.2003) (reversing an adverse credibility determination that was made on the basis of petitioner's husband's inability to remember the dates on which a Chinese official forcibly subjected the petitioner to various birth control measures).

In addition, the record does not support the IJ's finding that Kazi testified inconsistently concerning his friend Habib's stab wound and death. Throughout the course of the hearing, Kazi testified that Habib had been stabbed during the attacks at the political meeting and that he died after the stabbing. Indeed, all parties understood that Habib had died.[1] The record indicates that Kazi's one statement that Habib "was fine" after the stabbing was the result of language problems or miscommunication. *See Akinmade v. INS,* 196 F.3d 951, 956 (9th Cir.1999) (holding that the discrepancies in the petitioner's testimony were not a sufficient basis for an adverse credibility finding because they were "possibly the result of mistranslation or miscommunication"). Therefore, Kazi's statement was not a sufficient basis for the IJ's adverse credibility finding. *See id.*

The BIA also found that Kazi was not credible because he testified that he did not report that he witnessed Habib's murder when he was interviewed by the asylum officer. The BIA also surmised, without any evidentiary support, that Kazi did not mention the kidnaping in his asylum interview. We have recognized that "[c]ertain features of an asylum interview make it a potentially unreliable point of comparison to a petitioner's testimony for purposes of a credibility determination." *Singh v. Gonzales,* 403 F.3d 1081, 1087 (9th Cir.2005). Without a transcript of the asylum interview, a record of the questions and answers at the interview, or testimony from the asylum officer, Kazi's asylum interview is not a reliable evidentiary source. In these circumstances, the alleged discrepancies between the asylum interview and direct testimony cannot support the adverse credibility finding. *See id.* at 1089–90; *see also In re S–S–,* 21 I. & N. Dec. 121, 123–24, 1995 WL 688875 (BIA 1995) (holding that "the record must contain a meaningful, clear, and reliable summary of the statements made by the applicant at the interview" for statements or omissions at an asylum interview to support an adverse credibility determination).

## II.

The BIA also adopted the IJ's alternative holding that, even if Kazi suffered past persecution, the presumption of future persecution would be rebutted by changed country conditions pursuant to 8 C.F.R. § 208.13(b)(1). The basis for the

---

1. Even after Kazi testified that his friend "was fine" the IJ assumed that his friend was killed. The questioning regarding the stabbing proceeded as follows:

IJ: Now wait a minute your friend was stabbed?
Kazi: Yeah.
IJ: Did he survive or was he dead?
Kazi: No after two or three days he was fine.

IJ: Okay. Now wait for the questions. Go ahead and ask questions.
Counsel: What did he do after that when you saw them *kill* the person?
. . .
IJ: Okay now on that particular day that your friend was *killed* did you report that to the police?
(emphasis added).

IJ's determination was the 1997 State Department Country Report for Bangladesh, which reflects that Kazi's political party joined a coalition with the BNP. However, "[o]ur cases hold that 'individualized analysis' of how changed conditions will affect the specific petitioner's situation is required." *Garrovillas v. INS*, 156 F.3d 1010, 1017 (9th Cir.1998). The BIA's reliance on "information about general changes in the country is not sufficient." *Id; see also Lopez v. Ashcroft*, 366 F.3d 799, 805 (9th Cir.2004). We therefore remand for an individualized analysis of changed country conditions, which " 'could lead to the presentation of further evidence of current circumstances in [Bangladesh]—evidence that may well prove enlightening.' " *Id.* at 806 (quoting *INS v. Ventura*, 537 U.S. 12, 18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)).

PETITION GRANTED and REMANDED.