**Leonid Michaelovich KORBUKH,**
**Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney**
**General, Respondent.**

No. 03–74705.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 17, 2005.

Decided July 6, 2005.

---

\* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General. *See* Fed. R.App. P. 43(c)(2).

Judith Seeds Miller, Esq., Davis, Miller & Neumeister, Van Nuys, CA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, WWS–District Counsel, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, Terri J. Scadron, Esq., Stacy S. Paddack, Jennifer Keeney, Esq., DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: PREGERSON, GRABER, and GOULD, Circuit Judges.

## MEMORANDUM **

Leonid M. Korbukh, a native and citizen of Russia, petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge ("IJ")'s denial of his applications for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we grant the petition for review.

Where, as here, the BIA adopts the IJ's decision "for the reasons set forth therein," we "review the IJ's decision as the final agency determination." *Knezevic v. Ashcroft,* 367 F.3d 1206, 1210 (9th Cir. 2004). The IJ's factual findings are reviewed for substantial evidence. *Halaim v. INS,* 358 F.3d 1128, 1131 (9th Cir.2004). Crediting Korbukh's testimony, *Aguilera–Cota v. INS,* 914 F.2d 1375, 1383 (9th Cir.1990) (absent "explicit and direct finding" of adverse credibility, court should assume petitioner's testimony is truthful), we conclude that Korbukh's experiences in Russia cumulatively compel a finding that

he was persecuted on account of his Jewish ethnicity, *see Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir.1998) ("A single isolated incident may not 'rise to the level of persecution, [but] the cumulative effect of several incidents may constitute persecution.'" (alteration in original)).

First, Korbukh testified that he was beaten outside of a restaurant by supporters of an ultra-nationalist, anti-Semitic political group, after they had made racial slurs. He also testified that he was sprayed with tear gas and beaten by the special police when he tried to intervene as they were beating two men whom he recognized as Jews. Both incidents were of sufficient severity that Korbukh was required to seek medical treatment. "[W]e have consistently found persecution where, as here, the petitioner was physically harmed [on account of a protected ground]." *Duarte de Guinac v. INS,* 179 F.3d 1156, 1161 (9th Cir.1999). Furthermore, the IJ's determination that Korbukh could not establish a nexus between the police beating and his Jewish ethnicity because the beating "was precipitated by [Korbukh's] interfering with [police] activities" is inconsistent with our precedents. Per Korbukh's testimony, he was beaten for trying to stop the police from beating Jews, and we have held in the past that "resistance to discriminatory government action that results in persecution is persecution on account of a protected ground." *Chand v. INS,* 222 F.3d 1066, 1077 (9th Cir.2000) (holding that applicant was persecuted "on account of" race when he was beaten for questioning the racially discriminatory enforcement of a tax); *see also Guo v. Ashcroft,* 361 F.3d 1194, 1203 (9th Cir.2004) (beating constituted "persecution on account of [the petitioner's] religion" notwithstanding that petitioner "initiated

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

an altercation with the police" by attempting to prevent an officer from removing a cross from a tomb because beating was motivated in part by the petitioner's resistance to a religiously "discriminatory government action"). The connection between Korbukh's beating and his ethnicity is strengthened by the fact that one of the officers administering the beating stated "we have here another Jew one more Jew."

In addition to suffering physical attacks, Korbukh was harassed, threatened, and subjected to economic deprivation because of his ethnicity. He testified that he was fired from his first job as an actor when the theater where he worked was taken over by an anti-Semitic director, that he was insulted and harassed on a daily basis by his neighbors, and that he found Stars of David graffitied on his property. *See Korablina*, 158 F.3d at 1044–45 (past persecution where petitioner witnessed and experienced violence and harassment, received threats, was fired from a job and generally encountered difficulties with career advancement because of her religion). Korbukh also testified that he received phone threats warning him to "stop to operate [his ship-loading business because] there is nothing to do for Jewish people in that kind of business," and that another Jewish businessman he knew was killed after receiving similar calls. *See Khup v. Ashcroft*, 376 F.3d 898, 904 (9th Cir.2004) (past persecution where petitioner was told by military to discontinue preaching and then witnessed torture and killing of fellow preacher).

■ Finally, Korbukh testified that the Vladivostok city authorities forced the closure of his ship-loading business by prematurely terminating his pier leases. *Chand*, 222 F.3d at 1074 ("We have recognized that purely economic harm can rise to the level of persecution where there is 'a probability of deliberate imposition of substan-

tial economic disadvantage' upon the applicant on account of a protected ground."). The government asserts that the nexus requirement is not met because the lease termination was motivated by corruption, not Korbukh's ethnicity. We disagree. Korbukh testified that the city officials acted under the influence of the mafia, but also that "anytime when something happen like that it's happened only to the Jewish businesses," and that there was "a very, very close tie" between the mafia and the ultra-nationalist, anti-Semitic Zhirinovsky party. Additionally, Korbukh made offers of proof that one of his witnesses, Loskotof, would have testified that Korbukh's cargo company had been targeted "just because [Korbukh is a] Jew," and that another witness, Yakovets, would have testified that the city officials made their decision to break Korbukh's lease after "consideration with the business and nationality." Because this evidence compels the conclusion that the Vladivostok authorities were in part motivated by Korbukh's ethnicity when they terminated Korbukh's leases, it is sufficient to satisfy the nexus requirement. *Hoque v. Ashcroft*, 367 F.3d 1190, 1198 (9th Cir.2004) (applicant is eligible for asylum "[a]s long as the applicant produces evidence from which it is reasonable to believe that the persecutor's action was motivated, at least in part, by a protected ground"); *see also Shoafera v. INS*, 228 F.3d 1070, 1074–76 (9th Cir.2000).

We hold that Korbukh has established past persecution, giving rise to a presumptive eligibility for asylum and withholding of removal. 8 C.F.R. § 208.13(b)(1); *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir.2004). Accordingly, we grant the petition for review and remand to the BIA to give the Attorney General an opportunity to rebut this presumption and for the BIA to reconsider whether Korbukh qualifies for asylum and withholding of removal. *INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353,

154 L.Ed.2d 272 (2002) (per curiam); *Lopez v. Ashcroft,* 366 F.3d 799, 805–07 (9th Cir.2004).

**PETITION GRANTED and RE-MANDED.**