**Adam Alexandru VODNAR, et al., Petitioners,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–74132.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 2006.

Filed June 22, 2006.

---

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Jagdip Singh Sekhon, Esq., Sekhon & Sekhon, PLC, San Francisco, CA, for Petitioners.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, OIL, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Elisebeth Collins Cook, Washington, DC, for Respondent.

* The Honorable Kevin Thomas Duffy, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.
** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.
1. Adam Vodnar is the lead petitioner. His wife's claim is derivative of his.

Before: SCHROEDER, Chief Judge, GRABER, Circuit Judge, and DUFFY,* District Judge.

## MEMORANDUM **

Petitioners Adam Alexandru Vodnar, an ethnic Hungarian from Romania, and his wife Ligia Timis,[1] seek review of the Board of Immigration Appeals' decision, without opinion, affirming the immigration judge's (the "IJ") denial of their application for withholding of removal and for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").[2] We deny the petition.

Petitioner alleges that on five occasions from 1990 to 2000, he was persecuted because of his ethnic Hungarian background and his participation in a political party, the Democratic Union of Hungarians (the "UDMR"). In order to prevail on a claim for withholding of removal, Petitioner must show by a "clear probability" that if he is returned to his country, his life or freedom would be threatened on account of race, religion, nationality, membership in particular social group or political opinion. *See INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). In order to establish a claim under CAT, Petitioner must show "it is more likely than not" that if he is returned to Romania

2. Petitioner also filed an application for asylum; however, that claim was denied on the grounds that it was filed more than one year after he entered the United States. Therefore, we do not have jurisdiction to review that claim. *See Lanza v. Ashcroft,* 389 F.3d 917, 924 (9th Cir.2004).

he will be tortured within the meaning of CAT. *See Kamalthas v. INS,* 251 F.3d 1279, 1283 (9th Cir.2001). We review to determine whether there was substantial evidence to support the IJ's findings. *See Hoque v. Ashcroft,* 367 F.3d 1190, 1194 (9th Cir.2004).

Petitioner argues that it was improper for the IJ to rely on background documents which described political and social conditions in Romania because these documents were consistent with, rather than contrary to, his claim. An IJ may consider State Department reports and other background documents submitted by the parties to provide context in evaluating a petitioner's credibility. *See, e.g., Zheng v. Ashcroft,* 397 F.3d 1139, 1143 (9th Cir. 2005). However, "as a predicate, the petitioner's testimony must be inconsistent with facts contained in the country report or profile before the IJ may discredit the petitioner's testimony." *Id.* at 1144. That does not mean that every statement in the background documents must be inconsistent. Petitioner engages in selective reading, pointing only to those sections describing ethnic tension and general police misconduct. He fails to acknowledge the portions actually relied on by the IJ. These sections note that ethnic Hungarians are the country's largest ethnic minority, the UDMR is a part of the governing coalition, ethnic Hungarians have representation in parliament, and the tension between ethnic Hungarians and the majority population centers on group rights rather than mistreatment of individuals.[3] We find that the IJ's consideration of the background documents was proper.

Moreover, we find that the IJ's decision was based on evidence other than the background documents, which were used only to provide context. The IJ considered the Petitioner's testimony, the lack of support for Petitioner's claims in the letters he submitted, his failure to provide evidence to corroborate his claim that persecution of ethnic Hungarians is commonplace, evidence demonstrating that Petitioner's problem with the police was localized, and, evidence indicating that the police officers involved feared being reported to higher authorities. The IJ provided specific, cogent reasons for disbelieving Petitioner's testimony. Because there is substantial evidence supporting the findings and decision of the IJ, the petition must be DENIED.

---

**3.** For example, there are tensions regarding the posting of bilingual road signs in areas where the population is over 20% ethnic Hungarian and the establishment of a Hungarian University in Romania.

