Mohamadou **FOFANA**, Petitioner,

v.

Alberto R. **GONZALES**, Attorney General, Respondent.

No. 05–76724.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 2007.

Filed Sept. 4, 2007.

Robert Pauw, Esq., Gibbs Houston Pauw, Seattle, WA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, District Counsel, Immigration and Natu-

ralization Service, Office of the District Counsel, Helen J. Brunner, Esq., Susan M. Harrison, Esq., USSE–Office of the U.S. Attorney, Seattle, WA, for Respondent.

Before: HALL, TASHIMA, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Mohamadou Fofana, native and citizen of Sierra Leone, petitions for review of a final order of removal by the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of the Immigration Judge ("IJ"), who denied Fofana's application for asylum, withholding of removal, and relief under the Convention Against Torture. We deny the petition.

Fofana testified that his father was shot and the rest of his family chased from their home during an attack by Revolutionary United Front rebels. Fofana argues that this attack constitutes past persecution making him eligible for asylum. To be eligible for asylum an applicant "must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). Fofana argues that the rebel attack targeted him and his family at least in part because his father was a diamond merchant, and further argues that diamond merchants are "a particular social group" within the meaning of the statute. Fofana also argues that the rebels targeted him, his family and his entire village at least in

part because of imputed political opinion that the villagers supported the government.

The IJ concluded that Fofana had not established that the attack which killed his father was connected to a protected ground because "the rebels seemed to be generally attacking the town and the motivation seemed to be, as the respondent states, 'to get rich,'" rather than animus towards any particular person or social group. In addition to denying relief to Fofana because he failed to show persecution on account of a protected ground, the IJ also denied relief on the additional grounds that Fofana had been firmly resettled in Guinea, and on account of changed circumstances in Sierra Leone. In a per curiam opinion, the BIA adopted and affirmed the decision of the IJ holding that Fofana had failed to show that the attack which killed his father was on account of a protected ground, and also held that the IJ properly denied relief based on changed country conditions.[1]

When "the BIA adopts the decision of the IJ, we review the IJ's decision as if it were that of the BIA." *Hoque v. Ashcroft*, 367 F.3d 1190, 1194 (9th Cir.2004). "We review the IJ's findings of fact for substantial evidence and will uphold these findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Abebe v. Gonzales*, 432 F.3d 1037, 1039–40 (9th Cir. 2005) (en banc) (internal citation and quotation marks omitted). We may reverse the decision of the IJ or BIA only "if a reasonable factfinder would be compelled to conclude that the requisite persecution or fear has been shown." *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1133 (9th Cir.

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because we ultimately affirm on the basis that Fofana has failed to show persecution on a protected ground these alternative grounds are not addressed.

2004); *see also Gu v. Gonzales*, 454 F.3d 1014, 1018 (9th Cir.2006) ("We may reverse the decision of the Board only if the applicant shows that the evidence *compels* the conclusion that the asylum decision was incorrect.") (emphasis original).

The IJ's conclusion that rebels were generally attacking Fofana's town, and not targeting any particular social group is supported by the record. Fofana testified that when the rebels came "they were attacking everybody." He further explained: "When the rebel come, me and my father, we run to head in one direction, my mom and my sister also went to head in an other direction.... They shoot my father so bullet struck him, he died.... [T]he bullet struck my father." Fofana gave several other descriptions of the attack on his village, but he repeatedly stated that the rebels were "attacking everybody" and that the rebels "opened fire on the town." Fofana testified that the rebels targeted diamond merchants but also stated that the rebels "always target rich people and kill them, they take their money, they want to be rich." He also testified that, although his family supported President Kabbah, neither he nor his father ever voiced this support to anyone, and that he was unaware of the political affiliations of his fellow villagers. Fofana's claims that the rebels specifically targeted diamond merchants, and targeted all members of his village on account of their support for the government were not sup-

ported by specific facts. An IJ is not required to accept conclusory opinions unsupported by direct evidence. *See Dinu v. Ashcroft*, 372 F.3d 1041, 1044–45 (9th Cir. 2004) (holding that when there are numerous plausible explanations for persecution the IJ is not required to accept the applicant's assertion that it was on account of political opinion when the applicant "presents no direct evidence" of the reason for persecution); *see also Ochave v. I.N.S.*, 254 F.3d 859, 866 (9th Cir.2001) ("Even were we to conclude that the rapists imputed reactionary political opinions to Felicitas, the IJ's finding that the rape was not 'on account of' such opinions still would be supported by substantial evidence.").

Fofana's testimony indicates that the rebels attacked his village to seize money and diamonds, and that they did not specifically target either diamond merchants, or residents of the town. Fofana's testimony also indicates that a random bullet "struck" his father, rather than that anyone singled out his father for attack. While the attack which killed Fofana's father and separated him from his mother is lamentable, there is no compelling evidence that Fofana or his family was subject to persecution on account of political opinion or membership in any social group.[2]

Fofana has not marshaled the type of compelling evidence presented in cases such as *Knezevic v. Ashcroft*, 367 F.3d

2. Fofana complains that the BIA accorded insufficient weight to the expert witness, Mary Kortenhoven, who submitted a declaration on behalf of Fofana. But while the expert witness was knowledgeable about conditions generally in Sierra Leone, she lived about 100 miles from Fofana's village, had no specific knowledge of the attack, nor did she have any specific knowledge of the political situation in Fofana's village. Moreover, she testified that the rebels would often maim villagers as punishment and that maiming was a sign of the

rebels' hatred for their political enemies; but there was no testimony that anyone was maimed in the particular attack in which Fofana's father died. The IJ stated that he had taken the expert's declaration into consideration. Fofana's testimony, combined with the declaration of the expert witness, does not compel a conclusion that the attack was intended to punish villagers for their political opinion. *See Pedro–Mateo v. INS*, 224 F.3d 1147, 1151 (9th Cir.2000).

1206 (9th Cir.2004). In *Knezevic* Croatian attacks against ethnic Serbs were considered sufficient to compel a finding of persecution on a protected ground, even though Knezevic was not singled out as an individual. We explained that when "hostile forces [are] motivated by a desire to kill each and every member of [an ethnic] group" individualized persecution need not be proved, and we held that Knezevic had proved a "systematic campaign of ethnic cleansing by the Croats" against ethnic Serbs living in the area. *Id.* at 1211–12.

Whether being a member of family engaged in the diamond trade, or being a resident of a village can constitute membership in a protected social group is an issue which need not be resolved. Unlike in *Knezevic*, Fofana did not offer any evidence compelling the conclusion that the rebels desired to kill or persecute all diamond merchants, or that the rebels systematically targeted residents of Fofana's village because of imputed political opinion. Because our review of the record fails to disclose compelling evidence to support Fofana's allegations, we must defer to the BIA's determination that Fofana failed to prove that he was targeted on account of membership in a particular social group. *See Gu,* 454 F.3d at 1018.

Because we uphold the BIA conclusion that Fofana failed to show persecution on account of a protected ground, we need not address the alternative grounds for denying asylum. Additionally, by failing to establish eligibility for asylum, Fofana necessarily failed to demonstrate eligibility for withholding of removal. *See Movsisian v.*

*Ashcroft,* 395 F.3d 1095, 1097 (9th Cir. 2005). Finally, Fofana argues that if returned to Sierra Leone he would face inhuman working conditions, and asserts that returning him would violate the Convention Against Torture. Fofana cites no case holding that poor working conditions and "insufficient medical resources" in a country constitute torture or entitle an applicant to asylum on humanitarian grounds. We decline to so hold here.

The petition is **DENIED.**

TASHIMA, Circuit Judge, dissenting:

I dissent because the IJ did not address Fofana's claims that he was persecuted on account of two protected grounds: imputed political opinion and membership in a particular social group. The IJ was able to ignore these claims because he also ignored the declaration of Mary Kortenhoven, an American missionary, who had resided in the same region of Sierra Leone as Fofana for 14 years.[3] Kortenhoven's declaration stated that Fofana's village and family were attacked on account of their support for President Kabbah and that the RUF rebels viewed the villagers as enemies.

By ignoring this evidence, the IJ, like the majority, failed to recognize that this is a mixed motive case. While it is true that the RUF rebels may have been motivated by a "get rich quick" desire and general lawlessness, as outlined by the majority, "mixed motives ... do not defeat an asylum claim." *Garcia–Martinez v. Ashcroft,* 371 F.3d 1066, 1076 (9th Cir.2004). "A

---

**3.** The IJ gave only passing acknowledgment of the Kortenhoven declaration: "I take note of the declaration from respondent's expert." The BIA did not give "insufficient weight to the expert witness, Mary Kortenhoven," as the majority states, it too ignored her testimony altogether. The only testimony that the BIA discusses is Fofana's own testimony. In

an attempt to bolster its disposition and cure this deficiency, the majority does what the IJ and the BIA should have done and what *Ventura* admonishes we should not do—it weighs Kortenhoven's expert testimony in the first instance and finds it wanting. Maj. disp. at 6 n. 2.

persecutor may have multiple motives for inflicting harm on an asylum applicant. As long as the applicant produces evidence from which it is reasonable to believe that the persecutor's action was motivated, at least in part, by a protected ground, the applicant is eligible for asylum." *Hoque v. Ashcroft,* 367 F.3d 1190, 1198 (9th Cir. 2004).

We have stated that " 'it goes without saying that IJs and the BIA are not free to ignore arguments raised by a petitioner.' " *Montes–Lopez v. Gonzales,* 486 F.3d 1163, 1165 (9th Cir.2007) (quoting *Sagaydak v. Gonzales,* 405 F.3d 1035, 1040 (9th Cir. 2005)). Because the IJ and the BIA failed to address Kortenhoven's declaration and Fofana's claims of imputed political opinion and membership in a particular social group, I would remand pursuant to *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam), with directions that the agency make a record finding on these two grounds for asylum and withholding of removal. *See, e.g., Montes–Lopez,* 486 F.3d at 1165 (remanding pursuant to *Ventura* ); *Sagaydak,* 405 F.3d at 1045 (same).

I therefore respectfully dissent.