**Rodrigo Chavez GOMEZ, Petitioner,**

v.

**Eric H. HOLDER, Attorney General, Respondent.**

No. 02–72681.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 7, 2009.*

Filed Feb. 17, 2009.

Deborah Karapetian, Law Offices of Deborah L. Karapetian, Glendale, CA, for Petitioner.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Brendan Paul Hogan, Esquire, OIL, Michelle Gorden Latour, Esquire, Assistant Director, U.S. Department of Justice, Washington, DC, CAC–District Counsel, Esquire, Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: HUG, SKOPIL and BEEZER, Circuit Judges.

## MEMORANDUM **

Rodrigo Chavez Gomez, a native and citizen of the Philippines, petitions for review of a final decision issued by the Board of Immigration Appeals (BIA), affirming an Immigration Judge's (IJ) denial of asylum and withholding of deportation. The IJ determined that Gomez was not credible because he could not precisely recall dates of events and his testimony omitted details from his written application. We grant the petition for review and remand for further proceedings.

## DISCUSSION

Gomez lawfully entered the United States in 1991 and applied for asylum, contending he suffered political persecution after resigning from the Coalition for Socialist Reform (CSR), a group affiliated with the Communist Party (CPP) and the New People's Army (NPA). His written application recounted five incidents that led to his decision to flee the Philippines. First, he witnessed NPA soldiers shoot and kill his cousin for refusing to pay "revolutionary taxes." Second, he received "hate mail" and noticed he was being followed. Third, the tires on his car were shot out. Fourth, his apartment was burglarized by individuals (identified by neighbors as NPA soldiers) who left messages on the walls indicating that traitors are tortured and killed. Fifth, Gomez was run off the road by a car driven by an NPA soldier. When he returned to his apartment, there was a large, dead cat in front of the door with a note in its mouth stating "next time they won't fail."

At his hearing, Gomez responded to inquires from counsel and from the IJ. He explained why he resigned from the CSR, recounted the events of his cousin's death, told how NPA soldiers rammed his vehicle off the road, and related that he received hate mail. The IJ concluded that Gomez's testimony was not "credible or persuasive" because he "omitted significant events included in [his] application, and was unable to consistently provide dates." The BIA affirmed on those grounds.

Because this case predates the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, we apply a former standard of review, namely that "[m]inor discrepancies, inconsistencies or omissions that do not go to the heart of an applicant's claim do not constitute substantial evidence to support an adverse credibility finding." *Zi Lin Chen v. Ashcroft*, 362 F.3d 611, 617 (9th Cir.2004). Applying that standard, we conclude the BIA erred by finding that Gomez was not credible. While Gomez had difficulty remembering the exact dates of events that happened eight years prior to his hearing, we have long made clear that "discrepancies in dates which reveal

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir.1988).

Similarly, Gomez's omission of details in his testimony that were included in his written application does not support an adverse credibility finding. *See Singh v. Gonzales*, 403 F.3d 1081, 1085 (9th Cir. 2005). Even if Gomez's omission was significant and went to the heart of his claim, he was not required to repeat information "that he had already provided to the agency." *See id.* Gomez's application was clearly before the IJ because it was discussed and then admitted as an exhibit. Moreover, "[t]he application is ... part of the record and must be considered." *Mihalev v. Ashcroft*, 388 F.3d 722, 725 n. 3 (9th Cir.2004).

The IJ's concern for more specific testimony is also not a valid ground for denying relief when the applicant "was not given notice that he should provide such information, nor asked at the hearing to do so, either by the IJ or by counsel." *Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir. 1999); *see also Hoque v. Ashcroft*, 367 F.3d 1190, 1196–97 (9th Cir.2004) (reversing adverse credibility finding based on applicant's failure to mention two incidents "on her own during structured direct and cross-examination"). The IJ's invitation here to discuss "any other incidents that happened" was not sufficiently clear to alert Gomez that he needed to raise issues already disclosed in his application. Finally, corroborating evidence is not required when the IJ's proffered reasons for the adverse credibility determination are not sufficiently supported. *See Marcos v. Gonzales*, 410 F.3d 1112, 1118 (9th Cir. 2005).

■ The IJ held alternatively that Gomez failed to establish his eligibility for asylum or withholding of deportation. We note, however, the IJ limited the record to incidents described by Gomez in his testimony and ignored his application. Summarizing that testimony, she concluded that Gomez "was merely a member of the CSR" who later received hate mail when he resigned and then had his car "rammed by people wearing fatigues." She reasoned that "nothing else happened" and therefore Gomez did not suffer political persecution.

The IJ's reasoning ignores Gomez's testimony regarding the killing of his cousin by the NPA and, of course, ignores the incidents cited in the written application, including his tires being shot out, the burglarized apartment, the death warnings written on the wall, and the dead cat with the note. These are matters the IJ should have also considered in determining whether Gomez suffered persecution. *See Mihalev*, 388 F.3d at 725 n. 3; *Ochave v. INS*, 254 F.3d 859, 865 (9th Cir.2001) ("The IJ must consider evidence contained in [petitioner's] application for asylum."). Whether these additional circumstances are sufficient to establish Gomez's eligibility for relief, however, is a question we cannot answer, but rather requires a remand to the BIA. *See INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002); *Tekle v. Mukasey*, 533 F.3d 1044, 1055–56 (9th Cir.2008).

■ The IJ also opined that during Gomez's absence from the Philippines, his family was apparently not harmed, the NPA lost some of its strength, and it is likely the organization lost interest in him. These remarks are not a sufficient "individualized analysis of how changed conditions will affect [Gomez's] situation." *See Silaya v. Mukasey*, 524 F.3d 1066, 1072 (9th Cir.2008) (internal quotation marks omitted) (remanding to the BIA to determine if conditions in the Philippines have

changed so that petitioner would no longer have a well-founded fear of political persecution by the NPA). Moreover, we have held that reports of the "diminished strength of the NPA" are not sufficient to support the denial of asylum when those same reports also indicate that NPA insurgents continue to kill "many persons, including civilians." *See Marcos,* 410 F.3d at 1120; *see also Lim v. INS,* 224 F.3d 929, 935 (9th Cir.2000) (noting evidence that petitioner's family was not harmed and that the NPA's strength has weakened is insufficient to overcome petitioner's claim of a well-founded fear of future persecution on account of political opinion).

Finally, Gomez has renewed his motion for a remand to the BIA to permit him to apply for an adjustment of status based on his marriage to a lawful permanent resident. Because we remand on his asylum claim, it is not necessary for us to review the merits of his motion. *See Colmenar v. INS,* 210 F.3d 967, 968 n. 3 (9th Cir.2000) ("Because we remand to the BIA on [petitioner's asylum claim], we need not reach [petitioner's] motion to remand to the BIA for the presentation of evidence that he is eligible to adjust his status.").

**PETITION FOR REVIEW GRANTED, REMANDED FOR FURTHER PROCEEDINGS.**