**Damjan KNEZEVIC and Danica Knezevic, Petitioners,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–72384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 2004.

Filed May 24, 2004.

1208

Douglas D. Nelson (argued) and Alejandro O. Campillo, San Diego, for the petitioners.

Peter D. Keisler, Mary Jane Candaux, Margaret Kuehne Taylor, and Kurt Larson (argued), U.S. Department of Justice, Washington, D.C., for the respondent.

Before SILVERMAN, GOULD, and BEA, Circuit Judges.

BEA, Circuit Judge:

Damjan and Danica Knezevic ("the Knezevics"), ethnic Serbs and citizens of Bosnia–Herzegovina, petition this court for review of the Board of Immigration Appeals' ("BIA") summary affirmance of an Immigration Judge's ("IJ") denial of their applications for asylum and withholding of deportation. 8 U.S.C. § 1158 (1996); 8 U.S.C. § 1253(h) (1996). We have jurisdiction under 8 U.S.C. § 1105a(a)(1), as amended by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009 (September 30, 1996). *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997).[1] Reviewing the record in its entirety, we conclude the IJ's decision that the Knezevics failed to establish past persecution or a well-founded fear of future persecution based on their Serbian ethnicity is not supported by substantial evidence. Accordingly, we GRANT the Knezevics' petition for review. We REMAND the case so that the BIA may determine the reasonableness of requiring the Knezevics to relocate, and for it to reconsider the Knezevics' application for asylum and withholding of deportation.

## I FACTS

The Knezevics lawfully entered the United States on visitor visas on July 6, 1996. Shortly after their arrival, and before deportation proceedings were initiated, the Knezevics applied for asylum as "refugees." In their application, they alleged they had suffered past persecution during the civil war in Bosnia–Herzegovina, and claimed a well-founded fear of future persecution if required to return there. The Knezevics alleged they fled their hometown, Drvar, when shelling and bombardment by hostile Croat army forces threatened their lives. The Knezevics

---

1. Because the former Immigration and Naturalization Service ("Service") initiated deportation proceedings before April 1, 1997, and the BIA decision was entered on June 28, 2002, the transitional rules of the IIRIRA govern this appeal. *Kalaw*, 133 F.3d at 1149–50.

claimed that if they were forced to return to Bosnia–Herzegovina, they would fear for their lives because they would be persecuted by the invading Croats on account of their Serbian ethnicity. On January 23, 1997, the INS issued an Order to Show Cause why the Knezevics should not be subject to deportation for overstaying their visitor visas. 8 U.S.C. § 1227(a)(1)(B). At a hearing on November 19, 1997, the IJ found the Knezevics deportable as charged, and denied their joint application for asylum and withholding of deportation.

■ We accept Mr. Knezevic's unrebutted testimony given at the November 19, 1997 hearing as true because neither the IJ nor the BIA made an adverse credibility finding. *Ruano v. Ashcroft*, 301 F.3d 1155, 1159 (9th Cir.2002). Mr. Knezevic testified as follows on behalf of himself and his wife:[2] In 1995, the Croat army began shelling Drvar. The Knezevics feared for their lives because it was widely-known that the Croat forces intended to eliminate all Serbs from the areas they invaded. The Knezevics fled the city on foot, taking only minimal personal effects. Their business and home were destroyed and all their remaining personal property was stolen.

Drvar was under the control of the Croatian and Muslim Federation. If the Knezevics tried to return, they would face persecution and possibly death. They could not return to the Serb-held part of Bosnia–Herzegovina because Muslim forces were planning to attack, and the Serbian army was very weak and could not protect them. They also lacked the resources to relocate to a new part of Bosnia–Herzegovina held by the Serbs. Mr. Knezevic also feared they would not be

protected after NATO forces left that part of the country.

To support his testimony Mr. Knezevic also submitted, without objection, a November 8, 1996 United Nations High Commissioner of Refugees Repatriation Information Report (the "UNHCR Report"), which states the following: Before the civil war, 9,000 people lived in the town of Drvar and approximately 17,000 lived in the surrounding municipality. Almost ninety-seven percent of the population was Serbian. Following the Croat invasion in 1995, virtually all of the Serbs fled, and thereafter, Drvar was almost exclusively populated by Croats. Drvar was governed by a non-elected council composed entirely of Croats. Cases of harassment, looting of vacant homes, cattle theft, and physical violence against Serbs were documented, and several empty Serb homes were bombed after requests were made by Serbs to return. Croat forces had established a large military base in Drvar with approximately 2,000 soldiers, who regularly patrolled the streets. Serb attempts to return to Drvar had been unsuccessful, and those who tried were confronted with hostility and violence. One bus carrying Serbs was stoned when they tried to return.

The IJ also admitted into evidence without objection a newspaper article about the build up of the Muslim army near Drvar. The article quoted a senior NATO official as stating, "[t]he question no longer is if the Muslims will attack Bosnian Serbs, but when." *NATO Officials: Muslims Secretly Arming to Attack Bosnian Serbs*, N.Y. Times, Oct. 3, 1997, at A14.

The IJ also read into evidence from what he called an encyclopedia report. The report contained a short history of

---

**2.** Mr. Knezevic also submitted a written declaration, which was received in evidence by stipulation.

the area detailing the longstanding hatred between ethnic and religious groups in Yugoslavia such as the Croats, Serbs and Muslims. Both sides stipulated that the information in this report was correct. The report described the ethnic conflicts and civil war which had erupted in the early 1990s and the ethnic cleansing in which each group engaged in an effort to eradicate the others.

Although the IJ found Mr. Knezevic's testimony credible, he concluded that the Knezevics were not "refugees" because they had not proven individualized persecution. Instead, the IJ found they were "displaced persons," forced from their home by civil war. The IJ also found that the Knezevics failed to establish a well-founded fear of future persecution because their claims of imminent attack by Muslim forces were speculative and vague. On December 8, 1997, the Knezevics filed a Notice of Appeal with the BIA, contending that the IJ erred because, as Serbs, they would face persecution on account of their nationality if returned to Bosnia–Herzegovina.

█ The definition of refugee found at 8 U.S.C. § 1101(a)(42)(A), uses the term nationality. Claims of persecution based on race and nationality often overlap. *See Duarte de Guinac v. INS*, 179 F.3d 1156, 1160 n. 5 (9th Cir.1999) (BIA denied Guatemalan Quiche Indian's application for asylum and withholding of deportation based on his ethnicity; court of appeals granted petition and remanded case to BIA, finding that beatings and threats of death constituted persecution). Recent cases use the more precise term of ethnicity, "which falls somewhere between and within the protected grounds of race and

nationality." *Shoafera v. INS*, 228 F.3d 1070, 1074 n. 2 (9th Cir.2000) (internal quotations omitted) (BIA denied asylum application of Ethiopian citizen based on her claim that she was raped on account of her Amharic ethnicity; court of appeals granted the petition and remanded to the BIA finding evidence compelled the conclusion that petitioner was persecuted based on her ethnicity); *see also, Baballah v. Ashcroft*, 335 F.3d 981, 991 n. 10 (9th Cir.2003), *amended on other grounds*, 2004 WL 964164 (9th Cir.2004) (BIA denied application for asylum and withholding of removal by Muslim Israeli and his family based on severe harassment, threats, violence and discrimination; court of appeals granted the petition and remanded to the BIA, finding evidence compelled the conclusion that petitioner established persecution based on ethnicity and religion). The Knezevics' claim is based on their Serbian ethnicity.

On June 28, 2002, the BIA, per curiam, summarily affirmed the IJ's decision.[3] The Knezevics argue that the IJ erred in denying their application for asylum and withholding of deportation.

## II ANALYSIS

### A. Standard of Review

█ We generally review only the BIA's decision, but where, as here, the BIA affirms the IJ's decision without issuing an opinion, we review the IJ's decision as the final agency determination. *Falcon Carriche*, 350 F.3d at 849. We will uphold the BIA's denial of asylum if it is "supported by reasonable, substantial, and probative evidence on the record considered

---

3. The Knezevics contend the BIA violated their due process rights by summarily affirming the IJ's decision pursuant to the streamlining procedures in 8 C.F.R. § 1003.1(a)(7), because there was no showing that the BIA

considered the record on appeal or acknowledged any of the legal arguments raised. This argument is foreclosed by our decision in *Falcon Carriche v. Ashcroft*, 350 F.3d 845 (9th Cir.2003).

as a whole." *Ruano*, 301 F.3d at 1159(internal quotation marks omitted).

## B. Asylum and Withholding of Deportation

■■■ To be eligible for asylum or withholding of deportation, an applicant must prove that he is a person who is unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1064 (9th Cir.2003); *see also* 8 U.S.C. § 1101(a)(42). Persecution encompasses the "infliction of suffering or harm upon those who differ in race, religion or political opinion in a way regarded as offensive." *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc).

■■■ To establish eligibility for asylum on the basis of past persecution, an applicant must prove an incident that: (1) rises to the level of persecution; (2) is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control. *Baballah*, 335 F.3d at 987. A grant of asylum is discretionary even if the applicant meets the statutory criteria for eligibility. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 427, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

■■■ We have recognized that persecution comes in many forms. *See Baballah*, 335 F.3d at 987–88(severe harassment, threats, violence, and discrimination); *Chand v. INS*, 222 F.3d 1066, 1073–74 (9th Cir.2000) (physical violence); *Pitcherskaia v. INS*, 118 F.3d 641, 646 (9th Cir.1997) (forced institutionalization); *Gonzalez v. INS*, 82 F.3d 903, 910 (9th Cir.1996) (threats, violence against family, and seizure of family land and ration card); *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995) (discrimination and harassment);

*Kovac v. INS*, 407 F.2d 102, 105–07 (9th Cir.1969) (mental, emotional, and psychological harm).

### 1. Past Persecution

In concluding that the Knezevics failed to establish past persecution, the IJ found that there was no evidence the Knezevics were singled out as individuals for persecution, or that their family was threatened on account of a protected ground. The IJ thus concluded they were "displaced persons," not "refugees." The IJ's determination was, however, based on a misapprehension of the law. While proof of particularized persecution is sometimes required to establish a well-founded fear of future persecution, such proof of particularized persecution is not required to establish past persecution. *See* 8 C.F.R. § 1208.13(b)(1) (not mentioning any such requirement for past persecution); 8 C.F.R. § 1208.13(b)(2)(i)(C)(iii)(A) (proof of particularized persecution to establish a well-founded fear not required only where the applicant proves a pattern or practice of persecution of a protected group to which the applicant belongs); *Kotasz v. INS*, 31 F.3d 847, 852 (9th Cir.1994) (BIA denied application for asylum and withholding of deportation by Hungarian gypsies based on their ethnicity; court of appeals granted petition and remanded the case to the BIA, finding BIA erred in requiring petitioners to prove they were singled out for persecution where there was evidence other gypsies were being persecuted).

Further, the IJ's reasoning misses the critical distinction between persons displaced by the inevitable ravages of war (e.g., the bombing of London by the German Luftwaffe during World War II), and those fleeing from hostile forces motivated by a desire to kill each and every member of that group (e.g., the destruction of the

**1212**

Jewish neighborhoods on the Eastern front of Europe by the Einsatzgruppen, who followed the German Wehrmacht in WWII). In the first example, although the German armed forces intended to conquer and occupy London, they did not intend to kill every Londoner. In the latter example, the Nazi detachments did intend to kill every Jew, which made the persecution individual to each Jewish resident of an area invaded by the Nazis. The latter is persecution "on account of" a protected status, while the former is not. The record before us compels the conclusion that the town of Drvar was specifically targeted for bombing, invasion, occupation, and ethnic cleansing of Serbs by Croats.

■■■ Ethnic cleansing is "the systematic attempt to eliminate an ethnic group from a country or region as by forced expulsion or mass execution." WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed.2002). A claim of past persecution is strengthened where the applicant proves that an invading army intends to ethnically cleanse the region of the applicant's ethnic group. *Duarte de Guinac,* 179 F.3d at 1161–62; *Korablina v. INS,* 158 F.3d 1038, 1044–45 (9th Cir.1998) (BIA denied the application for asylum and withholding of deportation by Jewish citizen of the Ukraine; court of appeals granted petition and remanded the case to the BIA, holding that the beatings and disappearance of other Jews in Kiev coupled with the harassment and beating suffered by petitioner compelled a finding that petitioner suffered past persecution and had a well-founded fear of future persecution based on her ethnicity).

■■■ The stipulated evidence proved that the conflict between Croats and Serbs was specifically motivated by ethnic hatred and accompanied by a systematic campaign of ethnic cleansing by the Croats. The Knezevics presented evidence that the Croat forces who bombed and then invaded Drvar in 1995 were motivated by ethnic hatred for the Serbs who comprised the majority of Drvar's population. The Knezevics, like almost all of their fellow Serbs in Drvar, did not wait for the killing to begin. They fled when they realized the threat of harm—and possibly death—was imminent, packing only two bags each in ten minutes, and abandoning everything they owned to survive. The bombing destroyed the Knezevics' restaurant and home; the Croats stole all their personal property and occupied their home after its partial restoration.

The evidence also shows that a bus of Serbs attempting to return to Drvar was stoned by Croats; violent mobs of Croats blocked Serb re-entry to the town and destroyed the Serbs' homes; police refused to guarantee protection to Serbs seeking to return; and harassment, looting of vacant homes, cattle theft, and physical violence against Serbs by Croats were wide-spread.

The record thus compels the conclusion that the Knezevics suffered persecution as a result of the Croat program of ethnic cleansing against Serbs in Drvar. Consequently, we reverse the IJ's finding that the Knezevics did not suffer past persecution, and remand the Knezevics' asylum application to the BIA for further consideration in light of the foregoing analysis. *See INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

**2. Well–Founded Fear of Future Persecution**

■■■ An applicant may also establish refugee status by proving a well-founded fear of future persecution, even if the applicant was not persecuted in the past. 8 C.F.R. § 1208.13(b)(2). Even a ten percent chance that the applicant will be persecuted in the future is enough to establish a well-founded fear. *Al–Harbi v.*

*INS,* 242 F.3d 882, 888(9th Cir.2001). A well-founded fear of future persecution must be subjectively genuine and objectively reasonable. *See Montecino v. INS,* 915 F.2d 518, 521 (9th Cir.1990).

 The subjective element of the well-founded fear test is satisfied by an applicant's credible testimony that he genuinely fears persecution. *Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). Mr. Knezevic's testimony satisfied the subjective element. The objective element requires credible, direct, and specific evidence in the record that would support a reasonable fear of persecution. *Id.* An applicant need not prove that he will be singled out for persecution if he can prove a pattern or practice of persecution of people similarly situated to the applicant, who are members of a protected group. 8 C.F.R. § 1208.13(b)(2)(iii)(A)-(B); *Kotasz,* 31 F.3d at 852; *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1574–75 (9th Cir.1986) (acknowledging that asylum can be granted based upon membership in a particular social group where the members of that group are being systematically persecuted, but holding that young, urban Salvadoran males who have not served in the military were not an identifiable, protected social group under the immigration laws).

 In determining whether the Knezevics established a well-founded fear of future persecution, the IJ failed to consider all the evidence the Knezevics presented by focusing only on the Knezevics' fears of a Muslim-led attack, characterizing their fears as "vague" and "speculative" regardless of their fears of a Muslim invasion in Serb-held Bosnia–Herzegovina. The UNHCR Report and news articles substantiated Mr. Knezevic's other fears based on Croat actions, by documenting the ongoing resistance and physical violence Serbs continued to experience at the hands of Croats, when the Serbs attempt to return to Drvar. The Knezevics' fear of persecution by Croats in Drvar is objectively well-founded.

Moreover, the Knezevics need not demonstrate that they will be "singled out" for persecution upon return to Drvar to establish a well-founded fear of persecution because they proved a practice of persecution against Serbs in the region. 8 C.F.R. § 1208.13(b)(iii)(A)-(B). We have specifically held that:

> As the systematic attempt to annihilate the Jews in Nazi Germany conclusively demonstrates, *persecution of an entire group can render proof of individual targeting entirely superfluous.* Certainly, it would not have been necessary for each individual Jew to await a personal visit to his door by Nazi storm troopers in order to show a well-founded fear of persecution. Similarly, it would be unnecessary for members of other systematically persecuted groups to show that they have been selected on an individual basis as subjects of persecution.

*Kotasz v. INS,* 31 F.3d 847, 852 (9th Cir. 1994) (emphasis added).

Serbs are a recognized ethnic group protected under the immigration statutes. The Knezevics are Serbs. The record in this case compels the conclusion that Croats have a pattern and practice of ethnically cleansing all Serbs from the region where the Knezevics lived. We hold that under the facts of this case there are special circumstances regarding the Knezevics' status as Serbs warranting their eligibility for asylum. *See Sanchez–Trujillo,* 801 F.2d at 1575. Thus, they, like the Jews in Nazi-occupied lands, need not prove they will be individually targeted to establish a well-founded fear of future persecution. We therefore reverse the IJ's finding that the Knezevics do not have a well-founded fear of returning to Drvar and remand the Knezevics' application to

the BIA for reconsideration in light of this opinion.

### 3. Internal Relocation

The Immigration and Nationality Act ("INA") defines a "refugee" in terms of a person who cannot return to a "country," not a particular village, city, or area within a country. 8 U.S.C. § 1101(a)(42)(A). The IJ may deny eligibility for asylum to an applicant who has demonstrated a well-founded fear of persecution if the evidence establishes it would be reasonable, under all the circumstances, to return the applicant to another location within his country of nationality. 8 C.F.R. § 1208.13(b)(2)(ii); *Melkonian*, 320 F.3d at 1069–70.

■ The reasonableness of internal relocation is determined by considering whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and family ties. 8 C.F.R. § 1208.13(b)(3).

■ The first question is therefore whether the Knezevics could safely relocate to the Serb-held parts of Bosnia–Herzegovina. The Dayton Accord stated that 49% of Bosnia–Herzegovina had been returned to Serbs. The only evidence rebutting this fact was evidence of a possible attack by the Muslims against the Christian Serbs. The evidence regarding a Muslim attack was based solely on speculation by a senior European NATO commander who said, "[t]he question no longer is *if* the Muslims will attack Bosnian Serbs, but *when.*" There is no evidence in the record, however, that the Muslims ever actually attacked the 49% of the country held by the Serbs. The evidence therefore indicates that the Knezevics could safely relocate to the Serb-held parts of Bosnia–Herzegovina without fear of the Croats or Muslims. Having determined that it would be safe for the Knezevics to relocate to the Serb-held parts of Bosnia–Herzegovina, we must examine the evidence as to whether it would be reasonable to require them to do so under the other factors set forth in 8 C.F.R. § 1208.13(b)(3).

■ The Knezevics presented evidence that internal relocation to a part of Bosnia–Herzegovina that is held by Serbs would be unreasonable for them. Mr. Knezevic stated they could not return because they had no home, no business, no possessions, no place to go, and the quality of life in Bosnia–Herzegovina was abysmal.

Mr. and Mrs. Knezevic are now approximately 75 and 66 years old, respectively. If forced to relocate, they would have great difficulty finding employment, and the destruction of their business and loss of all their possessions means they would have no means of supporting themselves. Additionally, their family members no longer reside in Bosnia–Herzegovina.

Finally, the evidence proves that the Knezevic family gave substantial assistance to British and American military personnel during WWII by accommodating them in their home when Allied Forces joined Marshal Tito behind enemy lines to fight off encroachment by the Nazis and Nazi-aligned Croat forces. Consequently, the Knezevics may be at an even greater risk than other Serbs trying to return. To expect the Knezevics to start their lives over again in a new town, with no property, no home, no family, and no means of earning a living is not only unreasonable, but exceptionally harsh.

The IJ's determination that it would be reasonable to require the Knezevics to relocate internally to Serb-held Bosnia–Herzegovina was deficient. The IJ stated that, although the Knezevics had no home to which they could return, they could "probably" settle in the Serb-held areas of

the country. However, in making this determination, the IJ failed to take into account the numerous factors for determining reasonableness outlined in 8 C.F.R. § 1208.13(b)(3). The evidence presented by the Knezevics demonstrated that internal relocation would be unreasonable. Thus, we remand the issue of the reasonableness of internal relocation to the BIA for further consideration in light of this opinion.

## III CONCLUSION

We hold that the BIA's denial of asylum is not supported by substantial evidence in the record. Analyzed in the proper context, the targeting of Serbs like the Knezevics in Drvar, the circumstances of the Knezevics' flight, their inability to return to their home, and the destruction of their business, all support a finding of past persecution and support their claim of a well-founded fear of future persecution. This evidence compels us to conclude that the IJ erred in not finding that the Knezevics suffered past persecution and that they have a well-founded fear of future persecution.

Accordingly, we GRANT the Knezevics' petition for review. We REMAND the case so that the BIA may determine the reasonableness of requiring the Knezevics to relocate to a Serb-held part of Bosnia–Herzegovina in light of the factors set forth in 8 C.F.R. § 1208.13(b)(3), and for it to reconsider the Knezevics' application for asylum and withholding of deportation.

**PETITION GRANTED and REMANDED.**