Fang Fang SIAUW, Petitioner,

v.

Alberto R. GONZALES,* Attorney
General, Respondent.

No. 03–73882.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 18, 2005.**

Decided Feb. 23, 2005.

Robert G. Ryan, Esq., Law Offices of
Eugene C. Wong, PC, San Francisco, CA,
for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, San Francisco,
CA, Christopher C. Fuller, Janice K. Redfern, U.S. Department of Justice, Washington, DC, for Respondent.

Before: ALARCÓN, SILVERMAN, and
BEA, Circuit Judges.

MEMORANDUM ***

Fang Fang Siauw, a native and a citizen
of Indonesia, petitions for review of the
Board of Immigration Appeals' ("BIA")
decision    upholding    the    Immigration
Judge's ("IJ") denial of her applications for
asylum, withholding of removal and protec-

* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

** This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

tion under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's decision for substantial evidence. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (holding that the agency's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it). We deny the petition for review.

■ Substantial evidence supports the IJ's finding that Ms. Siauw is ineligible for asylum. To be eligible for asylum, Ms. Siauw had to prove past persecution or a well-founded fear of future persecution by the Indonesian government, or forces the government is unable or unwilling to control. *Knezevic v. Ashcroft,* 367 F.3d 1206, 1211 (9th Cir.2004).

With regard to past persecution, Ms. Siauw did not suffer any physical harm or receive any threats of harm based solely on the fact that she is an ethnic Chinese. Ms. Siauw was free to work and practice her religion at all times. While Ms. Siauw was discriminated against and harassed based on her status as an ethnic Chinese, this discrimination was not sufficiently egregious to constitute persecution. *See Ghaly v. INS,* 58 F.3d 1425, 1431 (9th Cir.1995) ("Discrimination ... as morally reprehensible as it may be, does not ordinarily amount to 'persecution' within the meaning of the Act.").

■ Ms. Siauw also failed to prove that she had a well-founded fear of future persecution. A well-founded fear must be both subjectively genuine and objectively reasonable. *Nagoulko v. INS,* 333 F.3d 1012, 1016 (9th Cir.2003). Even if Ms. Siauw subjectively fears that she will be persecuted if she returns to Indonesia, her fears are not objectively reasonable. Evidence of increased ethnic tolerance in Indonesia, the absence of any objective evidence of individualized risk of future

persecution, and her family's continued presence in Indonesia substantially support the IJ's finding that Ms. Siauw did not have an objectively reasonable fear of future persecution.

On February 4, 2004, Ms. Siauw filed a letter with the clerk pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure in which she cites *Sael v. Ashcroft* for the proposition that a member of the ethnic Chinese minority in Indonesia "must demonstrate a 'comparatively low' level of individualized risk in order to prove that she has a well-founded fear of future persecution." 386 F.3d 922, 927 (9th Cir.2004) (quoting *Hoxha v. Ashcroft,* 319 F.3d 1179, 1183 (9th Cir.2003)).

The evidence of individualized risk of future persecution presented by the petitioner in *Sael* is readily distinguishable from that offered by Ms. Siauw. Ms. Sael produced evidence that she and another Chinese woman "received threats from native Indonesians; their car was often vandalized, scrawled with sexist and racist remarks, and the tires slashed." *Sael,* 386 F.3d at 927. The boarding house in which Ms. Sael resided was stoned by a group which shouted her name, saying "the neighborhood is not for the Chinese." *Id.* The group unsuccessfully attempted to break through the boarding house gate. They then broke into Ms. Sael's automobile and destroyed it. *Id.*

On another occasion, a crowd tried to open a cab door in which she and her husband were passengers. "The rioters tried to open the door and banged on the windows...." *Id.* at 928. The mob threw rocks at the taxi. It was able to pull away. *Id.* "After that close encounter, Sael resigned from her job in Jakarta and did not leave her house in Bandung for three weeks, not even to buy groceries." *Id.*

In her Rule 28(j) letter, Ms. Siauw stated she presented "at least one imminent threat of violence." She notes that on one occasion "two native Indonesians riding on a motorcycle while brandishing knives accosted petitioner and her friend, Yap Sioe Ling, and robbed her friend of a bag she was carrying as they were returning to their car in a parking lot. During the incident, one of the native Indonesians cut the right arm of petitioner's friend, causing her to bleed heavily." *Id.* Ms. Siauw also testified that "during the attack, one of the native Indonesians said to her, 'hey, you're Chinese, if you scream anymore, I'll just kill you.'" *Id.* The threat was made to silence an eye witness to a random robbery and assault. Unlike the evidence presented by the petitioner in the *Sael* case, Ms. Siauw did not present specific and direct evidence that she was the victim of repeated threats and acts of vandalism, or other criminal activity, by native Indonesians. Ms. Siauw has failed to demonstrate that her subjective fear of future persecution solely because she is Chinese is objectively reasonable.

Because Ms. Siauw failed to establish eligibility for asylum, she necessarily failed to meet the more stringent standard for withholding of removal. *See Fisher v. INS,* 79 F.3d 955, 965 (9th Cir.1996) (en banc) (holding that an applicant who fails to satisfy the lesser standard of proof required for asylum necessarily fails to demonstrate eligibility for withholding of deportation).

Substantial evidence also supports the IJ's decision that Ms. Siauw does not qualify for protection under the Convention Against Torture. 8 C.F.R. §§ 208.16–208.18 (2005). Any discrimination or

harassment that Ms. Siauw suffered in the past does not rise to the level of torture, and Ms. Siauw offered no evidence that there is any likelihood that she will be tortured if she returns to Indonesia. Furthermore, Ms. Siauw failed to show that any alleged future torture would be by the government, or that the government would instigate or consent to her being tortured by a third party.

**PETITION FOR REVIEW DENIED.**