ORDER AND JUDGMENT*
MARY BECK BRISCOE, Chief Judge.
Amadou Thiam, a native and citizen of Senegal, seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA) affirming the decision of the Immigration Judge (IJ) denying his applications for asylum and restriction on removal under the Immigration and Nationality Act (INA) and for protection un *775 der the United Nations Convention Against Torture (CAT). Exercising jurisdiction under 8 U.S.C. § 1252(a), we affirm in part, reverse in part, and remand for further proceedings.
I. Background
Thiam is from the Casamance region of Senegal, where there is a long-running violent civil conflict between the Senegalese government and the Movement of Democratic Forces of Casamance (MFDC), which seeks to secure Casa-mance’s independence from Senegal. Thiam is Mandingo,[1] which is an ethnic minority group in Casamance and Senegal and is not the ethnic group of the majority of the MFDC. According to Thiam, he opposes the rebellion by the MFDC and does not want Casamance to be independent of Senegal.
On May 12, 2005, while working at his farm in Bignona, in the Casamance region, MFDC rebels confronted Thiam and demanded that he join the rebellion. He refused to do so and was brutally beaten. The next day, MFDC rebels attacked Big-nona, prompting the Senegalese army to shell and defend the area. Thiam attempted to flee to Ziguinehor, the capital of Casamance, but was apprehended by Senegalese security forces at a military checkpoint. Because he was still visibly injured from his beatings by the MFDC, Senegalese military forces suspected Thiam was part of the MFDC rebel forces and took him into custody. The soldiers detained Thiam for two days, stripped him of his clothing, collected his identification documents, and accused him of being part of the MFDC. While interrogating him, the soldiers severely kicked, cut, and beat Thiam because he refused to admit to a connection with the MFDC. The soldiers finally released Thiam after he agreed to sign a document renouncing any affiliation with the MFDC. But the soldiers warned Thiam that they would follow his activities and whereabouts and they threatened to kill him if they did not like what he was doing.
Thiam then moved to neighboring Gambia and ultimately entered the United States illegally in July 2006. He filed his application for asylum in June 2007 claiming, as relevant here, that he had been persecuted in Senegal by both MFDC rebels and Senegalese military forces on account of an imputed political opinion.[2] The Department of Homeland Security (DHS) denied the application in December 2007 and initiated removal proceedings. In proceedings before an IJ, Thiam conceded removability and applied for asylum, restriction on removal, and CAT protection. After a merits hearing, the IJ concluded Thiam failed to establish past persecution by either the MFDC rebels or the Senegalese military forces. Alternatively, the IJ found that even if past persecution had been established, internal relocation to other parts of Senegal — such as Dakar, the capital of Senegal — was a reasonable alternative. Accordingly, the IJ found Thiam removable and denied his requests for relief. The BIA affirmed in part and dismissed in part. The BIA affirmed the IJ’s finding that Thiam did not establish past persecution by MFDC rebel forces but concluded Thiam established past persecution by the Senegalese military forces. But it nevertheless affirmed the IJ’s denial of asylum and restriction on removal because Thiam could avoid fu *776 ture persecution by relocating to another part of Senegal other than Casamance. It also affirmed the denial of CAT protection. This appeal followed.
II. Discussion
On appeal, Thiam argues that he is eligible for asylum and restriction on removal because the BIA erred in finding that he could reasonably relocate to another part of Senegal. He claims this was erroneous because the presumption of a fear of future persecution was not rebutted with sufficient evidence and the BIA did not adequately consider the factors identified in 8 C.F.R. § 1208.13(b)(3). He further claims he is eligible for protection under the CAT.
A. Standard of Review
“Where, as here, a single BIA member issues a brief order, affirming ... the IJ’s order ... such an order constitutes the final order of removal ... and thus this Court will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance.” Rivera-Barrientos v. Holder, 666 F.3d 641, 645 (10th Cir.2012) (alterations in original) (internal quotation marks omitted). While we review the BIA’s decision, not the IJ’s, “we may consult the IJ’s opinion to the extent that the BIA relied upon or incorporated it.” Sarr v. Gonzales, 474 F.3d 783, 790 (10th Cir.2007).
“[W]e review the [BIA’s] findings of fact under the substantial evidence standard.” Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir.2004). Under this standard, “[t]he BIA’s findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary.” Yule v. Ashcroft, 355 F.3d 1222, 1233 (10th Cir.2004) (internal quotation marks omitted). We review the BIA’s legal conclusions de novo. Elzour, 378 F.3d at 1150. “AVhen the BIA has failed to address a ground that appears to have substance, we should not reverse on that ground, but instead remand.” Rivera-Barrientos, 666 F.3d at 645.
B. Asylum and Restriction on Removal
To be eligible for asylum, an alien must show that he is a “refugee” under the INA which he may do by demonstrating that he has suffered past persecution or has a well-founded fear of future persecution based on a statutorily protected ground. See 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13; Riverar-Barrientos, 666 F.3d at 645-46. Those protected grounds include, as relevant here, political opinion. See 8 U.S.C. § 1101(a)(42)(A). Upon establishing refugee status, the grant or denial of asylum is discretionary. See Krastev v. I.N.S., 292 F.3d 1268, 1271 (10th Cir.2002).
Outside of the asylum context, an alien may also seek restriction on removal under 8 U.S.C. § 1231(b)(3) to avoid persecution in his home country. An alien may not be removed to a country “if the Attorney General decides that the alien’s life or freedom would be threatened in that country because of the alien’s ... political opinion.” Id. To establish that his life or freedom would be threatened, “an applicant must establish a clear probability of persecution on account of one of the statutorily protected grounds.... A ‘clear probability’ means the persecution is more likely than not to occur upon return.” Uanreroro v. Gonzales, 443 F.3d 1197, 1202 (10th Cir.2006) (internal quotation marks omitted). Whereas a grant of asylum is discretionary, “restriction on removal is granted to qualified aliens as a matter of right.” Ismaiel v. Mukasey, 516 F.3d 1198, 1204 (10th Cir.2008).
*777 The BIA affirmed the IJ’s conclusion that Thiam failed to establish past persecution by the MFDC rebels on account of a protected ground.[3] The BIA disagreed, however, with the IJ’s conclusion that Thiam did not establish persecution by the Senegalese government on account of a protected ground. The BIA found that the political opinion attributed to Thiam and his “suspected support for the MFDC” “was a central reason why members of the Senegalese military forces were motivated to harm him.” Admin. R. at 4. The BIA therefore found that Thiam had suffered past persecution on account of an imputed political opinion.
This showing of past persecution created a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1). The government could rebut this presumption by showing by a preponderance of the evidence that Thiam could avoid future persecution by relocating to another part of Senegal and that “under all the circumstances, it would be reasonable to expect [him] to do so.” Id § 1208.13(b)(l)(i)(B). By the same token, because Thiam established past persecution, this created a rebuttable presumption that internal relocation was unreasonable. See id § 1208.13(b)(3)(ii). The inquiry-then on internal relocation is two-fold: 1) whether the applicant can safely relocate; and 2) whether it would be reasonable to expect the applicant to do so. See Gambashidze v. Ashcroft, 381 F.3d 187, 192 (3d Cir.2004) (“[T]he regulation envisions a two-part inquiry: whether relocation would be successful [in escaping persecution], and whether it would be reasonable.”)) Knezevic v. Ashcroft, 367 F.3d 1206, 1214-15 (9th Cir.2004) (addressing first whether applicants could safely relocate and, if so, whether relocation was reasonable).
In evaluating whether the government met its burden in overcoming the presumption of future persecution, the BIA relied, in part, on excerpts from a 2009 State Department Country Report on Senegal. It observed that, according to the Country Report, 1) ethnic groups in Senegal have coexisted relatively peacefully; 2) the Senegalese government generally has respected its citizens’ right of freedom of movement within the country; and 3) the Senegalese government has established support for internally displaced persons from the Casamance conflict. See Admin. R. at 5.
To the extent that this evidence addresses whether internal relocation is safe, it nevertheless fails to address Thiam’s particular circumstances of possible persecution at the hands of the Senegalese government on account of his imputed political opinion if he relocates. As Thiam accurately argues, in determining the efficacy of finding a safe haven through internal relocation, the issue presented to the BIA was not whether, in general, people displaced by the Casamance conflict may seek assistance from the Senegalese government, but whether Thiam, who had been persecuted by the Senegalese government, could safely and reasonably relocate within Senegal to avoid future persecution by government forces.
We note that the government did not submit any documentary evidence to overcome the presumption of future persecution. We recognize that, in the context of country conditions, a State Department report “may be probative in a well-founded fear case.” Krastev, 292 F.3d at 1276-77. But “we have cautioned that use of such [a] report does not substitute for an analysis of the facts of [the] applicant’s in *778 dividual circumstances.” Id. at 1277 (internal quotation marks omitted). A similar caution applies in determining whether internal relocation would be effective and reasonable. Yet, “[t]he BIA’s conclusory reliance on the Country Report reflects no consideration of the individualized circumstances facing [Thiam].” Id. at 1276. Accordingly, this evidence, standing alone, does not support a finding that Thiam could safely relocate to other parts of Senegal and is insufficient to meet the government’s burden.
But in addition to the Country Report, the BIA relied on testimony elicited from Thiam’s expert, Martin Evans, Ph.D., on the government’s cross-examination. The BIA stated, citing portions of Evans’ testimony, that members of Thiam’s ethnic group, the Mandingo, have lived in areas of Senegal outside of Casamance, including Dakar. See Admin. R. at 5. And it further stated that neither the MFDC nor the Senegalese government has directly attacked Dakar, though some Mandingo from Casamance live there. See id. Accordingly, based on this evidence, the BIA rejected Thiam’s claim that if he relocated to Dakar and relied on the Dakar community for support, he would be identified as from Casamance and falsely accused by the Senegalese government as an MFDC rebel. See id. And in further support, the BIA cited to Evans’ testimony that he was unaware of any Mandingo living in Dakar who had been persecuted by the Senegalese government for any reason. See id. at 5,153.
Given our consideration of this evidence, we conclude that it substantially supports that Thiam could safely relocate to Dakar. But we are unable to conclude that the BIA’s determination that the government met its burden in establishing that Thiam could reasonably relocate is supported by substantial evidence. See Knezevic, 367 F.3d at 1214 (determining that internal relocation was safe but concluding it was unreasonable); Gambashidze, -381 F.3d at 193-94 (concluding that substantial evidence did not support BIA’s conclusion that internal relocation would be successful in avoiding future persecution). The BIA stated this conclusion summarily and then, after consideration of the record evidence, it found that “there is no evidence other than [Thiam’s] speculation that he would be singled out for harm rising to the level of persecution if returned to Senegal.” Admin. R. at 5.
But this analysis is incomplete because, as we previously indicated, internal relocation involves a two-part inquiry of determining whether relocation is safe, and if so, reasonable. The BIA failed to consider and apply the factors identified in 8 C.F.R. § 1208.13(b)(3) in determining whether it would be “reasonable” for Thiam to relocate. That regulation requires that adjudicators consider the following factors:
whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties.
Id. Those factors are not necessarily determinative though of whether it would be reasonable for the applicant to relocate. Id.
Although the BIA’s recognition that there have not been direct attacks in Dakar by the Senegalese government may, to an extent, reflect its consideration of the harm Thiam might possibly face in Dakar, the BIA did not address the other factors relevant to a reasonableness determination. The government’s argument on appeal that there is no evidence that the BIA *779 did not consider these factors is wholly unpersuasive.
And, importantly, evidence presented by Thiam demonstrated that internal relocation to Dakar would be unreasonable. For example, Thiam testified that he does not have family in Dakar or other parts of Senegal, nor does he know any Mandingo living in Dakar. Further, Evans testified that the lack of relatives or other kin ties would make it extremely difficult for Thiam to integrate into the community in Dakar. Yet the BIA’s opinion does not reflect that it considered these social and cultural constraints or other determinative factors for internal relocation.
In sum, the BIA failed to adequately consider whether it was reasonable for Thiam to internally relocate. Accordingly, we remand this matter to the BIA for further proceedings not inconsistent with this opinion to determine the reasonableness of internal relocation. See, e.g., Arboleda v. U.S. Att’y Gen., 434 F.3d 1220, 1226-27 (11th Cir.2006) (per curiam) (holding that BIA’s failure to adequately consider reasonableness factors identified in 8 C.F.R. § 1208.13(b)(3) was reversible error); Hagi-Salad v. Ashcroft, 359 F.3d 1044, 1048-49 (8th Cir.2004) (remanding to the BIA for a reasonableness determination based on factors in 8 C.F.R. § 1208.13(b)(3)); Knezevic; 367 F.3d at 1214-15 (same). See also Gambashidze, 381 F.3d at 192 (“Thus the regulation envisions a two-part inquiry: whether relocation would be successful, and whether it would be reasonable”).
Regarding Thiam’s restriction on removal claim, like his asylum claim, the BIA concluded that the presumption of future persecution had been rebutted through internal relocation and, that Thiam had not otherwise demonstrated that his life or freedom would be threatened upon return to Senegal. Given our disposition of Thiam’s asylum claim, however, we also remand his restriction on removal claim for further consideration. See 8 C.F.R. § 208.16(b)(l)(i) (providing that presumption of future threat to life or freedom that arises upon showing of past persecution in country of removal may be rebutted by showing it is reasonable for applicant to relocate internally).
C. Convention Against Torture
Thiam also seeks review of the BIA’s denial of his CAT claim. The CAT “prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official.” Cruz-Funez v. Gonzales, 406 F.3d 1187, 1192 (10th Cir.2005) (internal quotation marks and brackets omitted); see also 8 C.F.R. § 208.18(a)(1). CAT protection does not require that Thiam show he would be tortured on the basis of a statutorily protected ground. See Cruz-Funez, 406 F.3d at 1192.
Thiam argues he will be tortured based on his imputed political opinion. The BIA concluded that Thiam’s speculation that he may be harmed upon return to Senegal is insufficient to establish a clear probability of torture by a public official or with the acquiescence of a public official. We have reviewed the record and determine that the BIA’s conclusion is supported by reasonable and substantial evidence and, as such, we are not compelled to conclude to the contrary.
III. Conclusion
We affirm the BIA’s denial of CAT protection. We reverse the denial of asylum and restriction on removal and remand for further proceedings consistent with the views expressed herein.

 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. The record provides two spellings for Thiam’s ethnic group: 1) Mandingo and; 2) Mandingue. We will use Mandingo.

. Thiam also claimed persecution based on membership in a particular social group, but he does not assert this ground on appeal.

. Thiam does not appeal this finding.