**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIE-ROSE BABI, | No.    14-70984 |
| Petitioner, | Agency No. A070-068-071 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM* |
| Respondent. | |

| | |
|---|---|
| JOSEPH B. BABI; AZADOUHIE BABI, | No.    14-70988 |
| Petitioners, | Agency Nos.    A070-068-125 |
| v. | A070-068-126 |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

On Petition for Review of Orders of the
Board of Immigration Appeals

Argued and Submitted June 6, 2017

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Pasadena, California

Before: REINHARDT and KOZINSKI, Circuit Judges, and BERG,[**] District Judge.

Joseph Babi and his daughter, Marie-Rose Babi, are citizens of Lebanon and Syriac Catholics. They petition for review of the Board of Immigration Appeals' order dismissing their appeals from an immigration judge's ("IJ") decision denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We review for substantial evidence, *Aguilera-Cota v. INS*, 914 F.2d 1375, 1378 (9th Cir. 1990), and we grant and remand the petition for review in part, and deny in part.

1. The BIA affirmed the IJ's finding that, although the Mr. and Ms. Babi's testimony was credible, the harms they experienced in Lebanon did not rise to the level of past persecution. We conclude that this determination is not supported by substantial evidence.

*a. Joseph Babi*

---

[**] The Honorable Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

Mr. Babi's claim for asylum and withholding of removal is based on four discrete incidents: two beatings which took place in 1980 and 1983, respectively, and two church bombings in 1989. The BIA properly considered all four of the events in assessing Mr. Babi's past persecution. *See Knezevic v. Ashcroft*, 367 F.3d 1206, 1211 (9th Cir. 2004). The BIA erred, however, in discounting the severity of Mr. Babi's harm as a result of each of these incidents.

First, the BIA improperly concluded that because Mr. Babi "did not seek medical care" after the first beating, his claim that his injuries were serious and lasting was diminished. This conclusion ignores the fact that Mr. Babi did require, and procure, medical treatment after the beating. Mr. Babi credibly testified that, after the beating, he suffered back injuries and a nervous breakdown. However, because he worked in a pharmacy in Lebanon, Mr. Babi was able to obtain the medication required to treat his injuries. Thus, Mr. Babi did seek medical care—he just sought it from himself. We have never held that, in order to demonstrate serious injury, a petitioner must seek outside medical treatment. Indeed, such a rule would make little practical sense. We would not conclude that a doctor who sustained a serious injury was unable to demonstrate persecution because he stitched the wound himself. Nor would we penalize a petitioner without health insurance for seeking care outside the formal medical system, if that is what he

3

could afford. Here, Mr. Babi's injuries following the first beating did require medical treatment, but he was able to provide such care based on his own resources. The BIA therefore erred in assessing the severity of Mr. Babi's injuries after the first attack.

Second, the BIA improperly concluded that Mr. Babi failed to seek medical treatment for injuries arising due to the second beating. The Board discounted the severity of Mr. Babi's injuries because it found that he failed to seek "medical treatment for injuries sustained in the second beating, although he did seek medical care for the psoriasis that appeared 2 weeks after the beating." This analysis ignores the fact that Mr. Babi repeatedly stated that the psoriasis was *caused by* the second beating. Psoriasis may be an unusual injury to sustain as the result of a beating, but that does not negate its relevance to the degree of Mr. Babi's harm. Rather, contrary to the BIA's conclusion, his efforts to seek medical care for his condition, including traveling to Europe for treatment, in fact strengthen his claim that the injuries he sustained due to the second beating were lasting and severe.

Third, the BIA improperly concluded that Mr. Babi's claim to past persecution was undermined by the fact that he left and returned to Lebanon three times during the six-year period between the second beating and the church bombings. The BIA is correct that "an alien's history of willingly returning to his

4

or her home country militates against a finding of past persecution." *Loho v. Mukasey*, 531 F.3d 1016, 1017-18 (9th Cir. 2008). *See also Kumar v. Gonzales*, 439 F.3d 520, 524 (9th Cir. 2006) (finding that petitioner's "voluntary return" to his home country was "indicative of [his] belief that it would be safe and appropriate for him to live" there). Yet these cases must be read in light of the rule that past persecution is a cumulative concept. Here, Mr. Babi's claim of past persecution rests upon the aggregate effect of the two beatings *plus* the two church bombings. Moreover, he testified that he did not apply for asylum during his first visit to the United States because, at the time, there was a cease-fire in place in Lebanon. Thus, the fact that he left and returned to Lebanon after the beatings, before fleeing permanently after the bombings, does not undermine his claim that all four incidents, together, rise to the level of persecution. Although Joseph's beatings may not have been sufficient to persuade him to abandon his home country, he need only show that the total effect of all of his past harms compelled him to leave.

Finally, the BIA failed to consider adequately Mr. Babi's claim that he suffers from lasting emotional trauma as a result of his experiences in Lebanon. As we have held, "persecution may be emotional or psychological, as well as physical." *Mashiri v. Ashcroft*, 383 F.3d 1112, 1120 (9th Cir. 2004), *as amended*

(Nov. 2, 2004), *amended*, No. 02-71841, 2004 WL 2435489 (9th Cir. Nov. 2, 2004). Here, because Mr. Babi's testimony was found credible, he was not required to provide any corroborative evidence in support of his claims. *See Aden v. Holder*, 589 F.3d 1040, 1043-44 (9th Cir. 2009) (discussing the "line of circuit authority for the proposition that corroboration cannot be required from an applicant who testifies credibly"). Yet in dismissing Mr. Babi's assertion of emotional trauma, the BIA improperly relied upon the "little weight" it gave to the expert testimony of a clinical therapist. In doing so, the BIA failed to recognize that Mr. Babi was under no obligation to present external evidence or expert testimony, and that he in fact provided credible testimony with respect to his claim of psychological harm. Mr. Babi's testimony and statements repeatedly discuss the fear and emotional trauma he sustained as a result of his beatings and the church bombings. Moreover, there is evidence in the record that Mr. Babi has been prescribed medication for anxiety and depression. The BIA therefore erred in concluding that Mr. Babi did not demonstrate serious emotional trauma as a result of his alleged persecution in Lebanon.

None of the reasons provided by the BIA for discounting the severity of Mr. Babi's harm in Lebanon is supported by substantial evidence. In light of the

6

cumulative evidence of Mr. Babi's physical injuries and emotional trauma, we conclude that he has demonstrated harm rising to the level of persecution.

### b. Marie-Rose Babi

As with her father, the BIA found that Marie-Rose Babi did not demonstrate harm rising to the level of past persecution. As with her father, we conclude that substantial evidence does not support this determination.

First, in finding that Ms. Babi did not demonstrate past persecution, the BIA relied in part on its determination regarding her father. The BIA stated that Ms. Babi's "past persecution claim is based largely on the harm that her father experienced," and then went on to note that it had "affirmed the Immigration Judge's determination that her father did not establish that the harm he experienced in Lebanon rises to the level of persecution." Because we reject the Board's conclusion with respect to Mr. Babi, its determination as to his past persecution does not provide substantial evidence for the BIA's finding that Ms. Babi also did not establish such harm.

Second, the BIA failed to properly account for the fact that Ms. Babi was a child when the alleged persecution occurred. When a petitioner seeks relief on the

basis of harm experienced as a child, the IJ must "look at the events from their perspective, [and] measure the degree of their injuries by their impact on children of their ages." *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042, 1046 (9th Cir. 2007). Ms. Babi was five years old when she lived through the two church bombings. Yet the BIA failed to address how a child of Ms. Babi's age would have experienced such events. In doing so, the Board failed to address Ms. Babi's credible testimony regarding the emotional trauma she endured as a result of the events in Lebanon. Ms. Babi testified that she has "very traumatic memories" of her time in Lebanon, to the extent that she feels "complete anger" when she hears Arabic. As Ms. Babi wrote in a statement provided when she was thirteen, she remembers "how terrified" she was in Lebanon, and that she would "always throw up from fear." Moreover, the record shows that Ms. Babi was prescribed anti-depressant medication and there was testimony that she received psychiatric treatment for anxiety and depression resulting from her time in Lebanon. Given Ms. Babi's tender age, this testimony and record evidence compels the conclusion that she did, in fact, suffer severe emotional trauma. *See Hernandez-Ortiz*, 496 F.3d.at 1045 ("The Guidelines for Children's Asylum Claims advises that harm a child fears or has suffered ... may be relatively less than that of an adult and still qualify as persecution.").

In light of these errors, and the evidence in the record of the trauma experienced by Ms. Babi, we conclude that the BIA's determination is not supported by substantial evidence, and that Ms. Babi has in fact established harm rising to the level of past persecution.

2. The BIA's conclusion that the Mr. Babi and Ms. Babi failed to demonstrate that they were entitled to relief under CAT is supported by substantial evidence. The Babis are unable to demonstrate that it is "more likely than not" that they would be tortured if returned to Lebanon. 8 C.F.R. § 1208.16(c)(2).

3. Accordingly, we grant the petition for review in part and remand to the BIA. On remand, the BIA must determine whether the Babis, having demonstrated harm rising to the level of persecution, are entitled to a presumption of a well-founded fear of future persecution, and, if so, whether that presumption has been overcome by evidence in the record. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

Petition **GRANTED** and **REMANDED** in part; **DENIED** in part.

9

FILED

OCT 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**KOZINSKI**, Circuit Judge, dissenting:

The Babis' asylum case rests on four events—the beatings in 1980 and 1983, and the two church bombings in 1989.  Sympathetic though the family's claim may be, my colleagues err by treating these events as evidence of past persecution.

Let's start with the two beatings.  We've held that "an alien's history of willingly returning to his or her home country militates against a finding of past persecution."  Loho v. Mukasey, 531 F.3d 1016, 1017–18 (9th Cir. 2008).  Since Mr. Babi left Lebanon and returned between the beatings and the bombings, the BIA naturally found that this undermined his claim of past persecution.  To avoid this result, the majority argues that "past persecution is a cumulative concept" and that "the aggregate effect of the two beatings plus the two church bombings" is sufficient to support the persecution claim.  In other words, because the beatings alone don't establish past persecution, the Babis' asylum case hinges on the church bombings.

But war-related violence doesn't automatically rise to the level of persecution.  To find persecution, we require "some evidence of [motive], direct or circumstantial."  INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992) (emphasis in original).  In Knezevic v. Ashcroft, 367 F.3d 1206 (9th Cir. 2004), we explained

the "critical distinction between persons displaced by the inevitable ravages of war (e.g., the bombing of London by the German Luftwaffe during World War II), and those fleeing from hostile forces motivated by a desire to kill each and every member of that group (e.g., the destruction of the Jewish neighborhoods on the Eastern front of Europe by the Einsatzgruppen, who followed the German Wehrmacht in WWII)." Id. at 1211–12.

The majority here blurs this distinction. It's plain from the record that the Lebanese conflict was a civil war, not a genocide: Diverse religious and political groups were all vying for power. For example, in proceedings before the immigration judge, Mr. Babi explained that his "cousin was fighting in a group trying to protect the interests of Syriac Catholics." And it's precisely because the Lebanese war involved multiple factions that we don't know who committed the church bombings. The Babis themselves aren't sure: Mr. Babi's son stated in 1999 that "[i]t was the Syrians or the Israeli [sic]. They both used to bomb us. It was two different countries." But twelve years later, Mr. Babi attributed the attack to "the Amal, Mouraditoun [Muslim militias], the Palestinians, all of them." None of these groups overlap. Because it's impossible to determine who actually attacked whom in this case, we have no idea whether these bombings were part of a persecution campaign or were simply collateral effects of an unfolding war.

That's not enough to meet the standard set by <u>Elias-Zacarias</u>.

If the beatings don't meet the threshold of past persecution and the bombings aren't persecution at all, the Babis' claim must fail: There's just not enough there. Without more specific evidence, we should treat the Babis as "persons displaced by the inevitable ravages of war" rather than persons "fleeing from hostile forces motivated by a desire to kill each and every member of that group[.]" <u>Knezevic</u>, 367 F.3d at 1211. We should deny the petition in full.