KOZINSKI, Circuit Judge, dissenting: The Babis’ asylum case rests on four events — the beatings in 1980 and 1983, and the two church bombings in 1989. Sympathetic though the family’s claim may be, my colleagues err by treating these events as evidence of past persecution. Let’s start with the two beatings. We’ve held that “an alien’s history of willingly returning to his or her home country militates against a finding of past persecution.” Loho v. Mukasey, 531 F.3d 1016, 1017-18 (9th Cir. 2008). Since Mr. Babi left Lebanon and returned between the beatings and the bombings, the BIA naturally found that this undermined his claim of past persecution. To avoid this result, the majority argues that “past persecution is a cumulative concept” and that “the aggregate effect of the two beatings plus the two church bombings” is sufficient to support the persecution claim. In other words, because the beatings alone don’t establish past persecution, the Babis’ asylum case hinges on the church bombings. But war-related violence doesn’t automatically rise to the level of persecution. To find persecution, we require “some evidence of [motive], direct or circumstantial.” INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original). In Knezevic v. Ashcroft, 367 F.3d 1206 (9th Cir. 2004), we explained the “critical distinction between persons displaced by the inevitable ravages of war (e.g., the bombing of London by the German Luftwaffe during World War II), and those fleeing from hostile forces motivated by a desire to kill each and every member of that group (e.g., the destruction of the Jewish neighborhoods on the Eastern front of Europe by the Einsatzgruppen, who followed the German Wehrmacht in WWII).” Id. at 1211-12. The majority here blurs this distinction. It’s plain from the record that the Lebanese conflict was a civil war, not a genocide: Diverse religious and political groups were all vying for power. For example, in proceedings before the immigration judge, Mr. Babi explained that his “cousin was fighting in a group trying to protect the interests of Syriac Catholics.” And it’s precisely because the Lebanese war involved multiple factions that we don’t know who committed the church bombings. The Ba-bis themselves aren’t sure: Mr. Babi’s son stated in 1999 that “[i]t was the Syrians or the Israeli [sic]. They both used to bomb us. It was two different countries.” But twelve years later, Mr. Babi attributed the attack to “the Amal, Mouraditoun [Muslim militias], the Palestinians, all of them.” None of these groups overlap. Because it’s impossible to determine who actually attacked whom in this case, we have no idea whether these bombings were part of a persecution campaign or were simply collateral effects of an unfolding war. That’s not enough to meet the standard set by Elias-Zacarias. If the beatings don’t meet the threshold of past persecution and the bombings aren’t persecution at all, the Babis’ claim must fail: There’s just not enough there. Without more specific evidence, we should treat the Babis as “persons displaced by the inevitable ravages of war” rather than persons “fleeing from hostile forces motivated by a desire to kill each and every member of that group[.]” Knezevic, 367 F.3d at 1211. We should deny the petition in full.