NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SATPAL SINGH, | No. 16-73259 |
| Petitioner, | Agency No. A206-098-106 |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 17, 2018
San Francisco, California

Before: GOULD and BERZON, Circuit Judges, and BLOCK,[**] District Judge.

Satpal Singh, a native and citizen of India, petitions for review of an order of

the Board of Immigration Appeals ("BIA") denying his application for asylum,

withholding of removal, and protection under the Convention Against Torture

("CAT"). Singh also petitions for review of the BIA's order denying his motion to

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

reopen proceedings based on materially changed country conditions. We deny the petition.

1. With respect to his asylum and withholding of removal claims, Singh argues that the BIA erred in holding that the government carried its burden of rebutting the presumption of future persecution, because the government had not demonstrated that internal relocation was safe and reasonable. More specifically, he claims that the agency failed to provide an individualized analysis of whether he could safely and reasonably relocate to another part of India. We review the BIA's decision for substantial evidence. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

Contrary to Singh's argument, the BIA did engage in an individualized analysis of whether relocation is safe. It considered the nature of his conflict in his home state, his ability to relocate to the areas in which his family resides, and whether his ethnicity and religious beliefs permitted his safe relocation to Punjab.

On the merits, it is doubtful whether Singh could safely relocate to the areas his family resides in, as they are roughly 15- 20 kilometers (around 9-12 miles) away from his home. But there was substantial evidence supporting the BIA's conclusion that the government met its burden of showing that Singh's relocating to Punjab, a majority Sikh state, would be safe.

In assessing whether internal relocation is reasonable, the agency must consider "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and family ties." *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir. 2004) (citing 8 C.F.R. § 1208.13(b)(3)). The BIA engaged in an individualized analysis as to the reasonableness of relocation. Moreover, the BIA's finding that Singh could relocate to Punjab was reasonable. Singh is Sikh, the region is predominantly Sikh, and he is young and has farming skills that could be used in Punjab. We therefore conclude that substantial evidence supports the BIA's finding that relocation to Punjab was reasonable.

2. With respect to Singh's CAT claim, substantial evidence supports the BIA's denial of relief. An applicant for protection under the CAT bears the burden of "establish[ing] that it is more likely than not that he . . . would be tortured if removed" to his country of origin. *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). Relevant evidence includes past torture, mass human rights violations within the country, and the applicant's ability to relocate to another part of the country where he will not be subject to torture. *See* 8 C.F.R. §§ 208.16(c)(3). Although the past attacks against Singh were serious, the harm inflicted did not amount to torture. Singh suffered bruises and swelling from

the attacks, treated by a physician with painkillers and a localized injection. Thus, Singh has not demonstrated that he suffered past torture and has not provided sufficient evidence to show that he is more likely than not to be tortured if removed to India.

3. Finally, Singh argues that the BIA abused its discretion in denying his motion to reopen proceedings based on materially changed country conditions and contends that it did not provide specific and cogent reasons for its denial. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). The BIA denied the motion to reopen because it was not based on previously unavailable, material evidence. The BIA concluded that the evidence of changed country conditions submitted with the motion to reopen highlighted generalized religious and political tension in India, did not demonstrate a material change in country conditions, and did not relate to the specific facts of his asylum and withholding of removal claims. The BIA's conclusion that Singh's evidence related to general country conditions and did not reflect changed country conditions was accurate with regard to the vast majority of the submitted editorials and articles. The bulk of the documentary evidence discussed growing intolerance of religious minorities in India under the Bharatiya Janata Party, but the focus of most of the editorials and articles was anti-Islam sentiment, not anti-Sikhism. Moreover, although a few of the articles

4

discussed sedition charges levied against Sikh protesters, there was little connection made between those charges and Singh's claims.

Singh did submit one blog post that detailed some actions against Sikhs in Punjab but was not discussed specifically by the BIA. The BIA's failure to address that one piece of evidence did not rise to an abuse of discretion. We presume that the BIA considers all presented evidence in the record and do not require it to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (quoting *Wang v. Bd. of Immigration Appeals*, 437 F.3d 270, 275 (2d Cir. 2006)). Furthermore, the BIA could have reasonably concluded that, on balance, the country conditions evidence suggested that Punjab is a safe region for Sikhs.

**PETITION FOR REVIEW DENIED.**